STATE OF NORTH CAROLINA v. TRACY BRAXTON LAWSON

No. COA07-1507

(Filed 16 December 2008)

**1. Appeal and Error— brief—statement of facts—motion to strike—denied**

A motion to strike the State's statement of facts in its brief was denied where none of the contested facts were relevant to the matters being appealed.

**2. Criminal Law— prosecutor's argument—burden of proof**

There was no abuse of discretion in a first-degree murder prosecution in allowing the prosecutor to make an argument to

the jury that defendant contended was an attempt to shift the burden, but in context the argument was an explanation that defendant would try to rebut the State's evidence. Furthermore the court correctly instructed the jury on the burden of proof.

**3. Criminal Law— prosecutor's argument—comments—not unduly prejudicial**

The trial court did not abuse its discretion in a first-degree murder prosecution by allowing the prosecutor to make certain comments about a witness and about forensics tests defendant did not have done. None of the statements had such an unduly prejudicial effect as to require a new trial.

**4. Criminal Law— prosecutor's argument—reasons to believe State's evidence—no intervention ex mero motu**

The trial court did not err by not intervening ex mero motu in a first-degree murder prosecution where the prosecutor made statements which defendant contend improperly stated his personal opinion of defendant's credibility. The prosecutor was merely giving reasons to the jury as to why it should believe the State's evidence over defendant's testimony, and none of the statements were so grossly improper that defendant was denied due process of law.

**5. Evidence— first-degree murder—Board of Nursing records—loss of license and financial difficulties—probative of motive**

There was no abuse of discretion in a first-degree murder prosecution in admitting defendant's Board of Nursing records and her use of pain medications where the State asserted that the evidence was probative of financial difficulties and a motive. The trial court excused the jury, heard both parties, excluded much of the evidence, and explained its reasons for allowing portions of the records.

**6. Criminal Law— instructions—self-defense—partial pattern jury instruction—no plain error**

There was no plain error in a first-degree murder prosecution where the court gave a partial pattern jury instruction on self-defense. The court conveyed the substance of the omitted instruction and properly instructed the jury on elements of self-defense and that the State had the burden to prove each element.

**7. Homicide— first-degree murder—directed verdict for defendant denied—evidence sufficient**

There was no error in denying a request for a directed verdict for defendant in a first-degree murder prosecution. The evidence was sufficient to find defendant guilty of that charge.

**8. Homicide— first-degree murder—short-form indictment—constitutionality**

Short-form indictments for murder are constitutional, and the indictment in this case properly complied with N.C.G.S. § 15-144.

Appeal by defendant from judgment entered 13 June 2007 by Judge James C. Spencer, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 19 August 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Sofie W. Hosford for defendant appellant.*

McCULLOUGH, Judge.

On 13 June 2007, a jury convicted Tracy Braxton Lawson ("defendant") of first-degree murder for killing her husband, Andy Lawson. On appeal, defendant contends that the trial court erred by (1) allowing the prosecutor to make improper statements during the State's opening statement and closing argument, (2) failing to exclude defendant's records with the Board of Nursing and her use of prescribed pain medications, (3) failing to instruct the jury with the complete pattern jury instruction on self-defense, (4) denying defendant's request for a directed verdict of not guilty, and (5) allowing a fatally defective indictment. We will also address defendant's motion to strike the State's statement of facts contained in its appellate brief. After careful review, we deny defendant's motion and find no prejudicial error in her trial.

I. Defendant's Motion to Strike

[1] We begin by addressing defendant's motion to strike the State's statement of facts section in its appellate brief. Defendant argues that many of the alleged facts contained in the State's brief are unsupported by the evidence at trial and are argumentative in nature in violation of Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure. Rule 28(b)(5) requires that an appellant's brief contain a

"nonargumentative summary of all material facts underlying the matter in controversy[.]" N.C. R. App. P. 28(b)(5) (2008). We deny defendant's motion and note that none of the contested facts are relevant in our determination of the matters being appealed.

## II. Background

On 17 July 2006, defendant was indicted for first-degree murder by an Alamance County Jury for the 11 June 2006 killing of her husband, Andy Lawson. Defendant was tried at the 4 June 2007 Criminal Session of Alamance County Superior Court, the Honorable James C. Spencer, Jr., presiding. On 13 June 2007, a jury found defendant guilty of first-degree murder and defendant was sentenced to life imprisonment without parole.

The State's evidence at trial tended to show the following: On 11 June 2006, the Alamance County Sheriff's Department responded to a disturbance call at 3110 Newlin Road in Snow Camp ("the Lawson home"). The police arrived at the Lawson home at 4:20 a.m. and found Mr. Lawson, who was later determined to be dead, lying at the top of the stairs with wounds to his head. Mr. Lawson's right hand and head were partially in the hallway and the rest of his body was in the master bedroom.

In the master bedroom, the police found a small table overturned and a telephone lying on the floor. The bedding was balled up and there was a bloodstain at the top of the bed. There was a loaded .357 revolver in the dresser and there were five rifles, most of which were antiques, in the closet.

In the adjacent bedroom, police found a post driver, with a red sweater wrapped around it. The police also found clothes that defendant had worn that night with bloodstains.

An autopsy revealed that Mr. Lawson had died as a result of blunt force trauma and at least two blows to his head. It was later determined that the abrasions on Mr. Lawson's head were consistent with the woven pattern of the red sweater that was wrapped around the post driver.

Subsequent testing revealed that there was no blood on the post driver but that the blood on the red sweater wrapped around it belonged to Mr. Lawson. The blood on one of defendant's shirts matched defendant's and to a lesser degree, Mr. Lawson's.

At the time of Mr. Lawson's death, he and defendant (collectively "the Lawsons") had been married for approximately seven years and had a four-year-old daughter. Defendant suffered from arthritis, spinal stenosis, and chronic back pain. Defendant's physician prescribed her medications to alleviate her pain.

The State offered several witnesses who testified that the Lawsons had been experiencing financial problems. The Lawsons had declared bankruptcy in April 2002. After defendant's nursing license was suspended in January of 2006, her income from her job at Wal-Mart was significantly less than her previous income as a nurse.

Upon Mr. Lawson's death, defendant was the beneficiary of his retirement and life insurance benefits, which were provided through his employer. His retirement benefits were worth nearly $40,000.00 and his life insurance benefits were about $57,000.00. Three or four weeks before Mr. Lawson's death, in the wake of a family member's hospitalization, the Lawsons discussed life insurance. Mr. Lawson's brother testified that Mr. Lawson said that he had good life insurance and that defendant and their daughter would be taken care of if anything ever happened to him. Defendant then told Mr. Lawson, "you better hope and pray nothing ever happens to [you.]" Mr. Lawson's brother testified that defendant sounded "halfway" joking when she made the statement.

At trial, defendant claimed that she killed Mr. Lawson completely in self-defense. She testified that Mr. Lawson was physically abusive and described an incident within six months of his death where he hit her in the face with his elbow. A few months prior to Mr. Lawson's murder, defendant began telling some of her coworkers at Wal-Mart about the physical abuse. Defendant said that Mr. Lawson kept several loaded guns in their home and also provided testimony from his ex-wife that he was violent. Defendant claimed that she was not aware of Mr. Lawson's life insurance policies.

On 10 June 2006, defendant discovered the post driver in her dining area after it had fallen onto the floor near her daughter's doll house. She carried the post driver upstairs with a pile of clothes in order to keep it away from her daughter. She placed the post driver near the doorway in the spare bedroom and wrapped her red sweater around it to cover the rough edges.

Around midnight that evening, she and Mr. Lawson went to bed in the master bedroom with their daughter. After a while, defendant

became uncomfortable and went downstairs to watch television. Mr. Lawson later came downstairs and told defendant that she needed to come to bed. After having further difficulty sleeping, defendant returned downstairs. Mr. Lawson came downstairs again accusing defendant of talking on the telephone and slapped her on the back of her head. He started cursing and shoved her against the wall as she tried to go upstairs. Mr. Lawson's eyes became red and the veins in forehead and neck were bulging out.

When Mr. Lawson walked up the stairs, he told defendant he was going to put her out of her misery and she believed that he was going to kill her. Mr. Lawson walked towards the dresser in the master bedroom which contained a handgun. In response, defendant grabbed the first thing she could see which was the post driver lying in the doorway. As Mr. Lawson reached for the dresser drawer, defendant struck him in the back of the head with the post driver. Mr. Lawson then pushed defendant to the foot of the bed and a struggle ensued causing the Lawsons to roll onto the floor. When Mr. Lawson began to reach towards defendant, she grabbed the post driver and hit him in the back of the head again. After Mr. Lawson collapsed, defendant called 911 and told the dispatcher that her husband was trying to kill her, she had hit him, and was unsure if he was dead. Defendant took her daughter and drove to her sister's house, leaving Mr. Lawson lying face down on the floor.

At trial, the State asserted that the substantial decrease in defendant's income, which resulted from her dependency to pain medications and loss of her nursing license, related to her financial motive to kill Mr. Lawson. Defendant objected to introduction of her records with the Board of Nursing, which the trial court denied. Jean Carter, a registered nurse and administrator at White Oak Manor testified that she employed defendant in June of 2005 and that defendant was compensated between $22.00 to $25.00 an hour. During this time, defendant was being prescribed Vicoprofen and Alprazolam for her pain. Her physician directed her to take one to two Vicoprofen tablets every six hours as needed and prescribed her 100 pills with three refills.

Ms. Carter testified that on one occasion she felt that defendant appeared "drugged or something." As a condition of defendant's employment, defendant submitted to a drug test and told her employer that she expected the drug test to be positive due to her prescription medications. Because the drug testing facility did not have information verifying defendant's prescriptions, it reported to

STATE v. LAWSON

[194 N.C. App. 267 (2008)]

defendant's employer that she had tested positive for drugs. As a result, Ms. Carter filed a complaint with the North Carolina Board of Nursing on 10 August 2005. Defendant did not attempt to clear her drug test or apply for a restricted license.

On 19 August 2005, defendant wrote a letter to the Board of Nursing surrendering her nursing license "due to need for treatment of chemical dependency" and requested "to be evaluated and considered for the alternative program that may assist me in treatment and recovery of this disease." Defendant enrolled in an alternative program for chemical dependency with the Board of Nursing on 14 September 2005. The trial court allowed the State to introduce documents that defendant had completed through this program in which defendant admitted to abusing pain medications. In one of the documents, defendant stated that the following incidents had resulted from her addiction: "Lost nursing license, lost job, financial difficulties." Defendant continued to work with the alternative program until she contacted the Board of Nursing on 4 January 2006 and requested to terminate her contract with the program because of financial problems. As a result, defendant would not be permitted to regain her nursing license without completing a year-long reinstatement process and paying anywhere from $750.00 to $1,400.00 for the costs of the program Kay McMullan, the Director of Investigations and Monitoring Department at the North Carolina Board of Nursing, testified that defendant's nursing license was suspended on 10 January 2006. Defendant started working at the Wal-Mart in Mebane on 3 January 2006 and earned between $7.40 and $7.80 an hour.

### III. Prosecutor's Statements

In her first argument on appeal, defendant claims that the trial court erred in allowing the prosecutor to make improper and unethical statements to the jury during his opening statement and closing argument. After careful review, we do not find prejudicial error.

"The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). This Court will only find an abuse of discretion if we determine that the trial court's ruling could not have been the result of a reasoned decision. *State v. Burrus*, 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996).

When a defendant fails to object during the State's closing argument, " 'our review is limited to whether the argument was so grossly

improper as to warrant the trial court's intervention *ex mero motu.*' " *State v. Nicholson*, 355 N.C. 1, 41, 558 S.E.2d 109, 137 (citation omitted), *remanded*, 355 N.C. 209, 560 S.E.2d 355, *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002), *cert. denied*, 359 N.C. 855, 619 S.E.2d 859 (2005). Such action is required of the trial court only if the State's " 'argument strays so far from the bounds of propriety as to impede defendant's right to a fair trial.' " *State v. Smith*, 351 N.C. 251, 269, 524 S.E.2d 28, 41 (1999) (citation omitted), *cert. denied*, 531 U.S. 862, 148 L. Ed. 2d 100 (2000).

"[C]ounsel are given wide latitude in arguments to the jury and are permitted to argue the evidence that has been presented and all reasonable inferences that can be drawn from that evidence." *State v. Richardson*, 342 N.C. 772, 792-93, 467 S.E.2d 685, 697, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996). However, "[a] prosecutor should refrain from making characterizations relating to a defendant which are calculated to cause prejudice before the jury 'when there is no evidence from which such characterizations may legitimately be inferred.' " *State v. Thompson*, 118 N.C. App. 33, 43, 454 S.E.2d 271, 277 (quoting *State v. Britt*, 288 N.C. 699, 712, 220 S.E.2d 283, 291 (1975)), *disc. review denied*, 340 N.C. 262, 456 S.E.2d 827 (1995).

**[2]** Defendant first assigns error to a remark made by the prosecutor in the State's opening statement. Defendant asserts that the State attempted to shift the burden to defendant when the prosecutor said, "Use your reason and your common sense because for everything that I've put forth, for every detail, for every fact the State puts forth, [defendant's] got to answer for or she will attempt to answer for." Defendant provided a timely objection at trial, which the trial court overruled. In context, it appears that the prosecutor was simply trying to explain to the jury that defendant was going to try to rebut the State's evidence. Furthermore, the record indicates that the trial court correctly instructed the jury that the State had the burden of proof and therefore, we cannot find an abuse of discretion.

**[3]** Defendant also assigns error to several statements made by the prosecutor during the State's closing argument, claiming that the prosecutor improperly commented on defendant's character and veracity, expressed his personal beliefs, appealed to the jury's sympathies, and argued facts outside the record.

Defendant assigns error to the prosecutor's statement about witness Sherman Betts when he stated, "[t]he fact that Sherman Betts thought that much of Andy Lawson, I believe he probably can see a

little bit beyond what somebody presents in their exterior." When the prosecutor pointed out that defendant's attorney did not have some of defendant's clothing tested, defendant asserts that it was improper for the prosecutor to say "[t]he reason he didn't have it tested is because he knows what he's going to find." Additionally, defendant assigns error to the following statement:

> You let her get go now, she's untouchable, untouchable. All she's got to do is get past you, ladies and gentlemen. You're like the goalie in hockey. If she can get the puck past you, she's home free. And not only is she home free, it's up to you as to whether or not she collects $98,000 in addition to being set free.

" 'Fair consideration must be given to the context in which the remarks were made and to the overall factual circumstances to which they referred.' " *State v. Gibbs*, 335 N.C. 1, 64, 436 S.E.2d 321, 357 (1993) (citations omitted), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). In the context of the entire argument, we do not believe that any statements in the closing argument had an unduly prejudicial effect as to require a new trial.

**[4]** Defendant also assigns error to several additional statements made by the prosecutor, which defendant did not object to during trial. Defendant contends that the prosecutor improperly stated his personal opinion on defendant's credibility when referring to defendant's testimony when he said that "[y]ou ain't ever seen a work of fiction sit that long since Gone With the Wind." He also compared defendant's version of the events to the Friday the 13th movies stating that:

> Do you really using your common sense believe that [Mr. Lawson] appeared to be a threat to [defendant] when he received that hematoma and the four by six-inch bruise to his skull?
>
> To believe that, you would have to pretty much believe in all of the Friday the 13th movies where the man goes from looking dead to springing right back up and into action, and that's just not the case.

In the case *sub judice*, it was permissible for the prosecutor to argue to the jury as to why it should not believe defendant. *See State v. Bunning*, 338 N.C. 483, 489-90, 450 S.E.2d 462, 464-65 (1994) (holding no error when the prosecutor asked the jury to conclude the defendant was lying). Even when a prosecutor's remarks are clearly improper, "defendant carries the heavy burden of showing that the

trial court erred in not intervening on his behalf." *See State v. Nance,* 157 N.C. App. 434, 442-43, 579 S.E.2d 456, 461-62 (2003) (finding that although the prosecutor should not have called the defendant a "liar," it did not result in sufficient prejudice to warrant a new trial). It appears that the prosecutor was just giving reasons to the jury, in his closing argument as to why it should believe the State's evidence over defendant's testimony. None of these statements, individually or collectively, are so grossly improper that defendant was denied due process of law; therefore, we cannot find that the trial court erred in failing to intervene *ex mero motu.*

### IV. Failure to Exclude Evidence

[5] In her second argument on appeal, defendant argues that the trial court erred by failing to exclude certain evidence. Specifically, defendant contends that allowing her records with the Board of Nursing and her use of prescription pain medications into evidence was unduly prejudicial. After careful review of the record, we do not find an abuse of discretion.

Rule 403 of this State's Rules of Evidence excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. N.C. Gen. Stat. § 8C-1, Rule 403 (2007). "Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion." *State v. McCray,* 342 N.C. 123, 131, 463 S.E.2d 176, 181 (1995). "[T]he trial court's ruling should not be overturned on appeal unless the ruling was 'manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Goode,* 350 N.C. 247, 258, 512 S.E.2d 414, 421 (1999) (citation omitted).

Over defendant's objection, the trial court accepted into evidence approximately ten exhibits, as well as defendant's testimony about the suspension of her nursing license and her prior abuse of pain medications. Defendant argues that the prejudicial nature of this evidence exceeded its probative value as the State attempted to portray defendant as a "desperate drug addict."

At trial, the State asserted that defendant's loss of employment, surrender of her nursing license, and financial problems were all probative of her motive to kill Mr. Lawson for his retirement and life insurance money. Before admitting this evidence, the jury was excused and the trial court carefully considered the State's evidence

STATE v. LAWSON

[194 N.C. App. 267 (2008)]

and allowed both parties to speak on the matter. The trial court reviewed approximately 90 pages of documentary evidence and heard in *voir dire* the potential testimony of Kay McMullan. The trial court excluded much of the evidence presented by the State, but explained its reasons for allowing portions of defendant's records with the Board of Nursing and her history of using prescription pain medications when it stated the following:

> [T]he Court believes that that evidence [regarding] the reason for the loss of [defendant's] job, the reason for the result of the loss of nursing license and consequence of her inability to secure a comparable job . . . is evidence [of] defendant's need for money, which would be admissible to show motive as well as possible intent and to rebut the claim of self-defense in as far as the need for money is concerned.

The trial court permitted the State to introduce defendant's self-report that she had completed after enrolling in the alternative program. The trial court found it relevant that in her self-report, she disclosed that her history of prescription drug abuse resulted in the loss of her job and financial problems. She also disclosed that her "family and financial issues/relationships [were] strained but slowly improving" and that her support system was "strained due to two immediate family members with acute health problems" but that her "[s]pouse [was] more supportive." The State asserts that this evidence was admissible to show that defendant did not report Mr. Lawson's alleged abuse and that contrary to her testimony, she referred to Mr. Lawson as "supportive." Due to the trial court's explanation that this evidence demonstrated motive as well as the extensive consideration that it gave each exhibit, we cannot hold that the trial court's ruling was not the result of a reasoned decision. We overrule this assignment of error.

### III. Jury Instructions

**[6]** Defendant contends that, because the trial court abused its discretion by failing to provide the complete requested pattern jury instruction on self-defense, defendant argues that as a result of this error, she was denied a fair trial and due process of law. Assuming *arguendo* that this assignment of error is properly before this Court, we find no error.

As defendant failed to object to the alleged instructional error at trial, this Court's review is limited to whether the trial court's instructions amounted to plain error. *See* N.C. R. App. P. 10(c)(4). "In decid-

ing whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983).

In the case *sub judice*, the trial court gave the pattern jury instruction, which defendant requested, but omitted the last paragraph which provided the following:

> And finally, if the State has failed to satisfy you beyond a reasonable doubt that the defendant did not act in self-defense then the defendant's action would be justified by self-defense; therefore, you would return a verdict of not guilty.

N.C.P.I. Crim. 206.10. If a request for a special instruction is made and is supported by the evidence, the court is not required to give the requested instruction verbatim; rather, it suffices if the requested instruction is given in substance. *State v. Dodd*, 330 N.C. 747, 753, 412 S.E.2d 46, 49 (1992). In this case, the trial court properly instructed the jury on elements of self-defense and that the State had the burden to prove each element. Specifically, the trial court conveyed the substance of the omitted instruction when it told the jury that "defendant would not be guilty of any murder or manslaughter, if she acted in self-defense as I've just defined it to be[.]" We hold that there was no error in the omission of the specified language and overrule this assignment of error.

### IV. Failing to Enter Directed Verdict

[7] Defendant asserts that the trial court erred in denying her request for a directed verdict of not guilty. She argues that the State was unable to present sufficient evidence that she did not act in self-defense. We disagree.

The standard of review for a motion for a directed verdict is the same as that for a motion to dismiss. *See State v. Ingle*, 336 N.C. 617, 630, 445 S.E.2d 880, 886 (1994) (stating that "it is well settled that a motion to dismiss and a motion for a directed verdict have the same effect"), *cert. denied*, 514 U.S. 1020, 131 L. Ed. 2d 222 (1995). A trial court should deny a motion to dismiss if, considering the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference, "there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is

relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both." *State v. Wright,* 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981).

The·elements required for conviction of first-degree murder are (1) the unlawful killing of another human being, (2) with malice, and (3) with premeditation and deliberation. *State v. Haynesworth,* 146 N.C. App. 523, 531, 553 S.E.2d 103, 109 (2001). "The intentional use of a deadly weapon gives rise to a presumption that the killing was unlawful and that it was done with malice." *State v. Bullard,* 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984). A killing is premeditated if "the defendant formed the specific intent to kill the victim some period of time, however short, before the actual killing." *State v. Bonney,* 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). " 'Deliberation' means an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.*

The evidence, when looked at in the light most favorable to the State, is sufficient. Evidence of malice could be inferred from the fact that defendant admitted to killing Mr. Lawson by hitting him in the back of the head with a post driver. The fact that defendant had brought the post driver upstairs earlier in the day could support an inference of premeditation and deliberation. The State also put forth evidence that the Lawsons had been experiencing financial problems and that defendant was aware that she was the beneficiary to Mr. Lawson's retirement and life insurance benefits. This evidence was sufficient to allow a jury to decide whether defendant was guilty of first-degree murder. As such, the trial court acted properly in denying defendant's motion, and we overrule this assignment of error.

### V. Short-Form Indictment

[8] Defendant contends that the short-form indictment charging her with first-degree murder is fatally defective. The indictment at issue alleges that defendant "unlawfully, willfully and feloniously and of malice aforethought did kill and murder ANDY LAWSON[.]" This indictment properly complies with N.C. Gen. Stat. § 15-144, the statute authorizing the use of short-form indictments for murder, which provides that "it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice afore-

thought, did kill and murder (naming the person killed)[.]" N.C. Gen. Stat. § 15-144 (2007). Our Supreme Court has consistently held that indictments for murder based on the short-form indictment statute are in compliance with both the North Carolina and United States Constitutions. *See State v. Braxton*, 352 N.C. 158, 174-75, 531 S.E.2d 428, 437 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *State v. Wallace*, 351 N.C. 481, 504-05, 528 S.E.2d 326, 341, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), *cert. denied*, 360 N.C. 76 (2005); *State v. Kilpatrick*, 343 N.C. 466, 472, 471 S.E.2d 624, 628 (1996). Therefore, this assignment of error is overruled.

### VI. Conclusion

Based on the aforementioned reasons, we find no error in defendant's trial.

No error.

Judges McGEE and STROUD concur.