STATE OF NORTH CAROLINA v. RAY LEE ROSS

No. COA10-1503

(Filed 18 October 2011)

## 1. Criminal Law—joinder of offenses—reconsideration

The trial court properly denied defendant's request for reconsideration of an order joining offenses that was entered by another superior court judge where the denial was properly supported. The record contained no indication that defendant argued any change of circumstances warranting reconsideration and defendant pointed to none on appeal.

## 2. Constitutional Law—Confrontation Clause—unavailable witness—testimony from probable cause hearing

Defendant's Confrontation Clause rights were not violated by the admission at trial of the testimony of one of his victims from the probable cause hearing. Defendant conceded that the witness was unavailable at trial but contended that he had not had a meaningful opportunity to cross-examine the witness. However, defendant cited no authority suggesting that he lacked a meaningful opportunity to cross-examine because only one of his two trial attorneys was at the probable cause hearing or that discovery must be complete for a cross-examination to be adequate.

## 3. Appeal and Error—preservation of issues—testimony admitted as agreed by defendant

Defendant did not preserve for appeal the admission of a law enforcement officer's testimony about a missing witness's statement. Defendant asserted at trial that he had no objection if the statement was admitted only for corroborative purposes and the court limited the use of the testimony accordingly.

## 4. Evidence—unavailable witness—statements to officers—corroborative evidence

The trial court did not abuse its discretion in a prosecution for attempted murder, assault, and other offenses by admitting as corroborative evidence statements made by an unavailable witness to two law enforcement officers. The statements to the officers added some details to the witness's testimony from the probable cause hearing but were substantially similar and not contradictory to the probable cause testimony, and information regarding the victims' criminal activity did not prejudice defendant.

**5. Homicide—attempted first-degree murder—premeditation and deliberation—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss a charge of attempted first-degree murder where the evidence was sufficient to show premeditation and deliberation. Defendant's argument required the appellate court to accept his version of the facts, but the appellate court was required to view the evidence in the light most favorable to the State.

**6. Assault—serious injury—evidence sufficient**

The trial court properly denied defendant's motion to dismiss charges of assault with a deadly weapon with intent to kill inflicting serious injury where defendant argued that the victims did not sustain serious injuries. Although the first victim did not suffer pain and only received three stitches, a jury could reasonably find that a bullet lodged in the brain represented a serious injury. Defendant argued that the second victim's injury was not potentially fatal, but did not cite authority suggesting that only potentially fatal injuries can be found to be serious.

**7. Sentencing—aggravating factors—not included in indictment**

The trial court erred under N.C.G.S. § 15A-1340.16(a4) by submitting aggravating factors to the jury that were not included in the indictment.

Appeal by defendant from judgments entered 9 April 2010 by Judge Paul C. Ridgeway in Rowan County Superior Court. Heard in the Court of Appeals 25 May 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Charles E. Reece, for the State.*

*Haral E. Carlin for defendant-appellant.*

GEER, Judge.

Defendant Ray Lee Ross appeals from his convictions of two counts of attempted first degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIK-ISI"), one count of attempted robbery with a dangerous weapon, and one count of assault on a female. Defendant primarily contends on appeal that prior statements given by one of the victims were admitted in violation of his right to confrontation. Because this witness was unavailable at trial, and the evidence consisted of testimony from a

probable cause hearing at which defendant's counsel cross-examined the witness, we hold that no violation of the Confrontation Clause occurred. With respect to testimony by law enforcement officers regarding what the witness told them, that evidence was substantially similar to the properly-admitted probable cause testimony and was, therefore, admissible for corroborative purposes only. Accordingly, we find no error as to the guilt-innocence phase of the trial.

Defendant, however, also argues that the trial court lacked authority to submit three non-statutory aggravating factors to the jury because those factors had not been set out in an indictment. We agree. Pursuant to N.C. Gen. Stat. § 15A-1340.16(a4) (2009), such aggravating factors "shall be included in an indictment or other charging instrument . . . ." Because of the violation of N.C. Gen. Stat. § 15A-1340.16(a4), we must remand for resentencing.

## Facts

The State's evidence tended to show the following facts. At approximately 5:30 or 6:00 a.m. on 2 February 2007, Pedro Romero Amaro and his wife, Angelica Martinez Besies, were asleep in their mobile home when a knock at their door woke them up. Mr. Amaro got out of bed and went to the front door. When he opened it, he saw defendant carrying something in a black plastic bag. Mr. Amaro knew defendant as a friend of a friend, and defendant had come to Mr. Amaro's residence a day or two earlier and sold Mr. Amaro a Mossberg shotgun.

Mr. Amaro let defendant inside, as he believed defendant was there to sell him another firearm. Mr. Amaro walked towards the kitchen and started to make coffee when he heard a gunshot. Mr. Amaro then felt heat at the back of his head and his vision began to get blurry. The next thing that he heard was his wife screaming in the bedroom and another gunshot.

During the same time frame, Ms. Besies, while she was in the bedroom, heard a noise from the kitchen and then heard her husband scream. Defendant came into the bedroom and pointed his gun at Ms. Besies' head as she lay in bed. The gun was covered with a black plastic bag and had tape around it. Ms. Besies reached for the gun and moved it away from her head just as defendant pulled the trigger. She was shot in the hand and screamed. Defendant then punched her in the face, breaking her nose, and grabbed her by the arm, trying to pull her out of bed.

Mr. Amaro came into the bedroom and saw his wife and defendant struggling. Mr. Amaro began to strike defendant in the face with his fists, and Ms. Besies was able to wrest the rifle from defendant. Mr. Amaro subdued defendant by holding him down on the bathroom floor while Ms. Besies called 911 and took defendant's firearm outside where she waited for the law enforcement officers.

Four officers with the Kannapolis Police Department arrived at the mobile home at approximately 6:15 a.m. The officers found Ms. Besies standing on the porch of the mobile home with her hand bleeding, and she told them that she had been shot. The officers also saw that a long gun inside a garbage bag was lying against the tongue of the trailer. Ms. Besies told the officers that her husband was holding a man down inside the home.

Three of the officers went inside and found Mr. Amaro holding defendant down on the bathroom floor. The floor was covered in blood. The officers saw that defendant had injuries to his head and face, and once he and Mr. Amaro were separated, defendant was secured by the officers and led into the living room. The officers saw that Mr. Amaro had blood on the back and side of his head, and he told them that defendant had shot him in the back of the head.

While the officers waited with defendant for medical personnel to arrive, defendant told the officers that he had come to the residence to collect money that Mr. Amaro owed him from a drug deal and that he had brought the gun in order to frighten Mr. Amaro into giving him the money. He said that Mr. Amaro attacked him, and in the struggle, defendant's gun accidentally discharged, shooting Mr. Amaro. Then, defendant went into the bedroom to get the money from Ms. Besies, but, according to defendant, she grabbed the gun, and it again accidentally discharged. At that point, Mr. Amaro came into the bedroom and began to fight with defendant.

Mr. Amaro and Ms. Besies were transported to the emergency room to have their injuries treated. Diagnostic imaging revealed that Mr. Amaro did in fact have a bullet lodged in his brain, and Mr. Amaro was kept at the hospital for several days for observation. Ms. Besies had been shot through the thumb, and there was gun powder stippling present on her skin that indicated she had been shot at a close range. Lead fragments from the bullet were still present in Ms. Besies' flesh when the doctor treated her injuries. Surgery was required to repair a broken bone in Ms. Besies' thumb.

In the days following the shooting, Mr. Amaro and Ms. Besies were both interviewed repeatedly by law enforcement officers. Upon being released from the hospital, both Mr. Amaro and Ms. Besies were arrested on numerous drug-related charges.

Law enforcement officers collected numerous items of evidence from Mr. Amaro and Ms. Besies' residence, including defendant's rifle, which was a Ruger .22 caliber semi-automatic rifle with a homemade silencer attached. The officers also seized a duffle bag carried by defendant to the house that contained an electric drill, a utility knife, a pillow case, a curtain tieback, and a sock tied into a knot. The officers also located the Mossberg 12 gauge shotgun defendant had sold to Mr. Amaro. Marijuana, electric scales, and various amounts of both real and counterfeit United States currency were also found in the residence. Further investigation uncovered that Ms. Besies had moved a cache of drugs from the residence to another location just prior to the arrival of the police. In his testimony at trial, Mr. Amaro admitted that he sold drugs from his home.

Officers interviewed defendant on the afternoon of the shooting. Defendant again claimed that Mr. Amaro owed him money from a drug deal and that he had gone to the house that morning to collect his money. Defendant stated that he took his .22 caliber Ruger rifle in order to frighten Mr. Amaro into giving him money, and he attached a homemade silencer (constructed from a plastic drink bottle, cotton balls, and duct tape) because he "did not want to make too much noise because if [he] shot the gun in the trailer park the neighbors would hear it and call the police." Defendant claimed that he had taken the duffle bag with him in order to trick Mr. Amaro into believing that he had another gun to sell.

When he arrived at the trailer park, defendant parked his car in front of a different trailer. Once Mr. Amaro let defendant inside his home, defendant claimed that they argued over the money and that the rifle discharged during the ensuing struggle. Defendant believed that Mr. Amaro was unconscious, so he went into the bedroom and demanded money from Ms. Besies while pointing the gun at her legs. Defendant claimed that Ms. Besies grabbed the gun, and that the gun accidentally discharged again during the struggle. Mr. Amaro then came down the hallway, and he and defendant began to fight. Defendant claimed Mr. Amaro attempted to drown him in the bathtub while telling his wife to shoot defendant. Ultimately, Mr. Amaro had subdued defendant by the time law enforcement officers arrived.

That same afternoon, law enforcement officers went to defendant's home, and defendant's wife gave them permission to search the house. In the garage, the officers found a plastic drink bottle that had been cut in half lying near a roll of duct tape. These items were consistent with the homemade silencer on the rifle defendant used to shoot Mr. Amaro and Ms. Besies.

While in custody, Ms. Besies testified at a probable cause hearing in this case on 21 February 2007. In April or May 2007, however, she posted bond and was released from jail. Ms. Besies was last seen by her lawyer in October 2007. Her attorney had no knowledge of her location at the time of trial. Mr. Amaro was still in custody at the time of the trial in this case and testified that in May 2008 he had received a letter from Ms. Besies informing him that she was in Cancun, Mexico.

The Mossberg shotgun that defendant sold to Mr. Amaro on or about 1 February 2007 was evidence in another shooting that occurred just a few days earlier. On Monday, 29 January 2007, Heather Helms discovered the body of her father, Henry Aldridge, on the floor of the living room of his home. He had been shot twice in the back of the head with a .22 caliber weapon. Evidence suggested that the shooting took place early in the morning. Ms. Helms had last seen her father alive on Saturday, two days earlier.

Among the items missing from Mr. Aldridge's home when his body was discovered was a large amount of cash as well as a Mossberg shotgun that Ms. Helms had purchased for her father in November 2006. Mr. Aldridge's neighbor testified that he had last seen the Mossberg shotgun inside Mr. Aldridge's house either the Tuesday or Wednesday before his murder when he had borrowed the shotgun to scare off an animal. On Saturday, 27 January 2007, Mr. Aldridge telephoned the neighbor in the morning to complain that the neighbor had neglected to clear the shell casing from the shotgun after having fired it.

On 1 February 2007, defendant sold the Mossberg shotgun to Mr. Amaro. When interviewed by law enforcement, defendant admitted that he had known Mr. Aldridge and that he had previously been to his house.

Defendant was indicted for two counts of attempted first degree murder, two counts of AWDWIKISI, and one count of attempted robbery with a dangerous weapon. Defendant was also charged with assault on a female although no charging documents appear in the record. All of these charges were in connection with the shootings of Mr. Amaro and Ms. Besies in their home on 2 February 2007. Defend-

ant was also indicted for first degree murder, larceny of a firearm, and robbery with a dangerous weapon, all in connection with the death and robbery of Henry Aldridge on or about 29 January 2007.

The State's motion for joinder of all of the offenses was granted, and, subsequently, defendant's request for rehearing on the motion for joinder and motion for severance was denied. At the trial, the jury found defendant guilty of all the charges relating to the shooting and attempted robbery of Mr. Amaro and Ms. Besies. The jury acquitted defendant of the charges related to Mr. Aldridge.

The jury also found the existence of three aggravating factors: (1) that defendant utilized a firearm equipped with an unregistered silencing device in the commission of these offenses, and he is not charged with violating federal law; (2) that defendant's conduct on this occasion included his involvement in the illegal sale and purchase of narcotics, and he is not charged with a violation of narcotics laws; and (3) that defendant's conduct was part of a course of conduct in which the defendant engaged and which included the commission of other crimes of violence against another person or persons. The trial court found no mitigating factors and sentenced defendant to two consecutive aggravated-range terms of 220 to 273 months imprisonment. Defendant timely appealed to this Court.

I

**[1]** We first address defendant's argument that the trial court erred when it denied defendant's motion to sever the offenses regarding Mr. Aldridge from the offenses involving Mr. Amaro and Ms. Besies. The order allowing the State's motion for joinder was entered by Judge James E. Hardin. The hearing on defendant's request to rehear the motion for joinder or, alternatively, to allow a motion for severance was heard by Judge Paul C. Ridgeway. Defendant limits his argument on appeal to the denial of "defendant's motion to sever the first-degree murder charge from the attempted first-degree murder charges that involved different victims that occurred seven days apart . . . ."

As this Court has previously stated, "it is well established in our jurisprudence 'that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.' " *State v. Woolridge*, 357 N.C. 544, 549, 592 S.E.2d 191, 194 (2003) (quoting *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972)). There is an exception, however,

when a party shows a " 'substantial change in circumstances.' " *Id.* at 549, 592 S.E.2d at 194 (quoting *State v. Duvall*, 304 N.C. 557, 562, 284 S.E.2d 495, 499 (1981)).

"A substantial change in circumstances exists if since the entry of the prior order, there has been an intervention of new facts which bear upon the propriety of the previous order." *First Fin. Ins. Co. v. Commercial Coverage, Inc.*, 154 N.C. App. 504, 507, 572 S.E.2d 259, 262 (2002) (internal quotation marks omitted). The moving party has the burden of demonstrating a change in circumstances. *Id.*

Judge Ridgeway made the finding that: "The Order Joining Offenses for Trial entered on July 21, 2009 by the Honorable James E. Hardin, Superior Court Judge, is a valid and binding order previously entered in this matter and there has been no substantial change in circumstances warranting modification of that order." This finding was properly supported. The record contains no indication that defendant argued any change of circumstances warranting reconsideration of joinder, and defendant points to none on appeal. Accordingly, we hold that the trial court properly denied the request for rehearing and motion to sever.

II

Defendant next contends that the trial court violated the Confrontation Clause when it admitted into evidence (1) Ms. Besies' testimony given at defendant's probable cause hearing, and (2) statements given by Ms. Besies to law enforcement officers. We disagree.

A. Probable Cause Testimony

[1] "The Confrontation Clause of the Sixth Amendment bars admission of testimonial evidence unless the declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the declarant." *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203, 124 S. Ct. 1354, 1374 (2004), and *State v. Lewis*, 361 N.C. 541, 545, 648 S.E.2d 824, 827 (2007)).

Defendant concedes that Ms. Besies was "an unavailable witness at trial." With respect to the prior opportunity to cross-examine, defendant not only had an opportunity to cross-examine Ms. Besies at the probable cause hearing, but his counsel did in fact cross-examine her. Nonetheless, he contends that the admission of this testimony was error under *Crawford*.

No North Carolina appellate court has directly addressed the question whether an opportunity to cross-examine a witness at a probable cause hearing is sufficient to meet the requirements of *Crawford.* However, our Supreme Court explained in *State v. Lewis,* 360 N.C. 1, 16, 619 S.E.2d 830, 840 (2005) (emphasis added), *judgment vacated on other grounds,* 548 U.S. 924, 165 L. Ed. 2d 985, 126 S. Ct. 2983 (2006), that "several types of preliminary hearings may afford an opportunity for witness testimony, *such as the probable cause hearing* provided for in N.C.G.S. § 15A-606 and 15A-611, . . . . Statements by witnesses at all of these hearings are likely to be testimonial under *Crawford* and, if so, are inadmissible at trial unless the defendant had an opportunity to cross-examine the witness and the witness is unavailable at the time of the trial."

This language suggests that the opportunity to cross-examine a witness at a probable cause hearing will render the probable cause testimony admissible if the witness subsequently becomes unavailable. *See also State v. Estrella,* 277 Conn. 458, 475, 476-77, 893 A.2d 348, 359, 360 (2006) (holding that "the defendant had a more than adequate and full opportunity to cross-examine [witness] both generally and specifically to address whether [witness] was giving truthful testimony," and therefore "the trial court properly admitted into evidence at the trial [witness'] transcribed testimony at the probable cause hearing"); *cf. United States v. Doyle,* 621 F. Supp. 2d 337, 344 (W.D. Va. 2009) (holding prior testimony of unavailable witness at bond hearing was properly admitted and did not violate Confrontation Clause because facts showed defendant had opportunity and similar motive to question witness at hearing and subsequent trial).

Defendant contends, however, that he had no *meaningful* opportunity to cross-examine Ms. Besies at the probable cause hearing because the various charges had not yet been joined, defendant's lead trial counsel had not yet been appointed, and his counsel at that time had not yet had an opportunity to review all the discovery. The probable cause hearing took place with respect to the charges involving Ms. Besies and Mr. Amaro, the sole charges on which the jury found defendant guilty. Thus, with respect to the charges on appeal, defendant's motive to cross-examine Ms. Besies would have been the same as his motive at trial. Defendant does not identify any topics that his counsel did not address at the probable cause hearing that would have been covered in cross-examination at the trial. *See State v. Ramirez,* 156 N.C. App. 249, 258, 576 S.E.2d 714, 721 (2003) ("The testimony was taken at a preliminary stage of this case [at a bond hear-

ing], and defendant had the same motive at that time as he would have had at trial, to expand upon and possibly discredit [witness'] testimony.").

At the probable cause hearing, defendant was represented by counsel who was appointed for the Amaro/Besies charges and who was co-counsel at trial. The Confrontation Clause requires that the *defendant* have a meaningful opportunity to cross-examine the witness—defendant has cited no authority suggesting that he lacked a meaningful opportunity to cross-examine when only one of his two trial attorneys was at the prior hearing.

Further, our courts have never held that discovery must be complete for a cross-examination opportunity to be adequate. Here, defendant was represented by counsel at the probable cause hearing (who was one of his trial counsel), he had the same motive to cross-examine Ms. Besies as at trial, and his counsel did in fact cross-examine Ms. Besies. These circumstances are sufficient to establish an adequate opportunity to cross-examine Ms. Besies. The trial court, therefore, did not err in admitting Ms. Besies' probable cause hearing testimony. *See State v. Clark*, 165 N.C. App. 279, 287, 598 S.E.2d 213, 219 (2004) ("At the earlier trial, defendant was present, represented by counsel, had an opportunity to cross-examine [witness], and, through his counsel, did cross-examine her.").

B. <u>Statements to Law Enforcement Officers</u>

[3] In addition to the probable cause testimony, the trial court allowed three law enforcement officers to read to the jury statements that Ms. Besies had given to them. With respect to the first two officers, when the State sought to admit evidence of the statements, defendant objected, and the trial court admitted the statements solely for purposes of corroboration. As for the third law enforcement officer, defense counsel asserted at trial that if the statement was admitted only for corroborative purposes, he had no objection. Since the trial court limited the third statement's use to corroboration, as requested by defendant, and since defendant does not argue plain error on appeal, defendant has not preserved for appellate review any issue as to the admission of the third statement.

[4] With respect to the first two statements, our Court has previously noted that when "evidence is admitted for a purpose other than the truth of the matter asserted," such as when evidence is admitted solely for purposes of corroboration, then "the protection afforded by the Confrontation Clause against testimonial statements is not at

issue." *State v. Walker*, 170 N.C. App. 632, 635, 613 S.E.2d 330, 333 (2005). Defendant argues that the written statements were nonetheless inadmissible because they "went far beyond the testimony the witness presented in the probable cause hearing."

According to our Supreme Court, North Carolina case law establishes "the rule that prior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness' in-court testimony." *State v. Williamson*, 333 N.C. 128, 136, 423 S.E.2d 766, 770 (1992). *See also State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986) ("The victim's prior oral and written statements to [the detective], although including additional facts not referred to in his testimony, tended to strengthen and add credibility to his trial testimony. They were, therefore, admissible as corroborative evidence.").

Here,. while defendant contends that the testimony contained " 'significant additional facts,' " he does not specifically identify which facts precluded the statements from being admitted as corroborative evidence. Our review indicates that the statements to the officers added some details to the description in Ms. Besies' probable-cause testimony of the morning of the shooting and her earlier encounter with defendant when he sold a gun to Mr. Amaro. The information contained in these statements regarding the material events was, however, "substantially similar" and not contradictory to that given by Ms. Besies during the probable cause hearing.

The statements also added information regarding Mr. Amaro's and Ms. Besies' drug dealing, counterfeiting activity, and illegal immigration. We fail to see how the jury's hearing information regarding the criminal activity of Mr. Amaro and Ms. Besies prejudiced defendant. We, therefore, hold that the trial court did not abuse its discretion in admitting the additional statements made by Ms. Besies to law enforcement as corroborative evidence.

### III

**[5]** Defendant next contends that the trial court erred when it denied his motion to dismiss the charges of attempted first-degree murder and AWDWIKISI. In considering a motion to dismiss, the Court must ask " 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "In reviewing

challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.* at 378-79, 526 S.E.2d at 455.

"The elements of attempted first-degree murder are: (1) a specific intent to kill another; (2) an overt act calculated to carry out that intent, which goes beyond mere preparation; (3) malice, premeditation, and deliberation accompanying the act; and (4) failure to complete the intended killing." *State v. Tirado*, 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004). Defendant contends here that there was no evidence he possessed a specific intent to kill Mr. Amaro or Ms. Besies and that there was no evidence of premeditation and deliberation.

As our Supreme Court has explained, "[s]pecific intent to kill is an essential element of first degree murder, but it is also a necessary constituent of the elements of premeditation and deliberation. Thus, proof of premeditation and deliberation is also proof of intent to kill." *State v. Jones*, 303 N.C. 500, 505, 279 S.E.2d 835, 838-39 (1981) (internal citation omitted). Generally, premeditation and deliberation must be proven by circumstantial evidence because they "are not susceptible of proof by direct evidence." *State v. Love*, 296 N.C. 194, 203, 250 S.E.2d 220, 226 (1978). "A defendant's conduct before . . . the killing is a circumstance to be considered in determining whether he acted with premeditation and deliberation." *State v. Leary*, 344 N.C. 109, 121, 472 S.E.2d 753, 760 (1996).

The State's evidence was sufficient to permit the jury to find that defendant acted with premeditation and deliberation when he shot Mr. Amaro and Ms. Besies. Viewed in the light most favorable to the State, the evidence presented at trial showed that defendant went to Mr. Amaro and Ms. Besies' house because defendant had given Mr. Amaro $6,000.00 for cocaine and had not received either cocaine or his money back. Defendant started preparing the day before the shootings by coming up with a plan to gain entry to the house with his gun and by constructing a silencer so that neighbors of Mr. Amaro and Ms. Besies would not hear the gun when it went off. The next day, when he carried out his plan, he shot Mr. Amaro in the back of his head and then walked into the bedroom and pointed a gun at Ms. Besies' face. When the gun went off, it did not strike Ms. Besies in the face only because she pushed the gun aside.

This evidence is sufficient for the jury to find premeditation and deliberation. It showed defendant's planning of the assault, including his prior intent to shoot, and his deliberate aiming of the gun at the

victims' heads, without provocation, suggesting an intent to kill. *See, e.g., State v. Taylor,* 362 N.C. 514, 531, 669 S.E.2d 239, 256-57 (2008) (holding that defendant's entering store he intended to rob with semi-automatic weapon was evidence that he was prepared to fire weapon in event of confrontation and, therefore, was evidence of premeditation and deliberation), *cert denied,* ___ U.S. ___, 175 L. Ed. 2d 84, 130 S. Ct. 129 (2009); *State v. Lawson,* 194 N.C. App. 267, 279, 669 S.E.2d 768, 776 (2008) (holding that evidence defendant hit victim in back of head with post driver that she had brought upstairs earlier was sufficient evidence of premeditation and deliberation), *disc. review denied,* 363 N.C. 378, 679 S.E.2d 837 (2009).

Defendant's argument otherwise requires that we accept his version of the facts—that the shooting occurred during a struggle. We are, however, required to view the evidence in the light most favorable to the State and, under this standard of review, we hold the trial court properly denied defendant's motion to dismiss the attempted first degree murder charges.

**[6]** Turning to the charges of AWDWIKISI, the State was required to prove "(1) an assault, (2) with a deadly weapon, (3) an intent to kill, and (4) infliction of a serious injury not resulting in death." *State v. Grigsby,* 351 N.C. 454, 456, 526 S.E.2d 460, 462 (2000). Defendant contends that he did not have an intent to kill and that he did not inflict a serious injury.

We have already concluded that the State presented sufficient evidence of an intent to kill. With respect to the element of "serious injury," our Supreme Court has explained:

> Whether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions. A jury may consider such pertinent factors as hospitalization, pain, loss of blood, and time lost at work in determining whether an injury is serious. Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury.

*State v. Hedgepeth,* 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991) (internal citations omitted).

Here, defendant shot Mr. Amaro in the head, causing his vision to blur, and he then was "knocked out." He was kept in the hospital for several days for observation because he had a bullet lodged in his brain. Ms. Besies was shot through her thumb. She had lead fragments in her hand and surgery was required to repair a broken bone in her

thumb. Ms. Besies stated that she had to undergo rehabilitation for her thumb and that she did not expect to ever have full use of her thumb.

While defendant argues that Mr. Amaro did not sustain a serious injury because a doctor testified that Mr. Amaro did not suffer any pain and only received three stitches, we believe that a jury could reasonably find that having a bullet lodged in one's brain represented a serious injury. As for Ms. Besies, defendant argues only that her wound was not "potentially fatal." Defendant, however, cites no authority suggesting that only potentially fatal injuries can be found serious, and we know of none. We, therefore, hold that the trial court properly denied the motion to dismiss the charges of AWDWIKISI.

IV

**[7]** Finally, defendant contends the trial court erred by submitting aggravating factors to the jury when those factors had not been included in an indictment. The trial court submitted three aggravating factors to the jury pursuant to N.C. Gen. Stat. § 15A-1340.16(d)(20), which allows a jury to consider "[a]ny other aggravating factor reasonably related to the purposes of sentencing." These three aggravating factors included: (1) "the [d]efendant utilized a firearm equipped with an unregistered silencing device in the commission of these offenses, and he is not charged with a violation of federal law[;]" (2) "[t]he defendant's conduct on this occasion included his involvement in the illegal sale and purchase of narcotics, and he is not charged with a violation of narcotic laws[;]" and (3) "the [d]efendant's conduct was part of a course of conduct in which the defendant engaged and which included the commission of other crimes of violence against another person or persons."

Pursuant to N.C. Gen. Stat. § 15A-1340.16(a4), "[a]ny aggravating factor alleged under subdivision (d)(20) of this section shall be included in an indictment or other charging instrument, as specified in G.S. 15A-924." The State does not dispute that the three aggravating factors submitted to the jury under N.C. Gen. Stat. § 15A-1340.16 (d)(20) were not included in an indictment or "other charging instrument." N.C. Gen. Stat. § 15A-1340.16(a4). Instead, the State simply served defendant with notice of its intent to prove the existence of those factors. Under N.C. Gen. Stat. § 15A-1340.16(a4), the trial court could not, therefore, submit the three aggravating factors to the jury.

Although defendant specifically relied upon N.C. Gen. Stat. § 15A-1340.16(a4), the State, in arguing that there was no error, does not address the statute at all. Rather, the State asserts: "[B]oth the

IN RE C.G.R.

[216 N.C. App. 351 (2011)]

North Carolina Supreme Court and this Court have explicitly held that there is no requirement that aggravating factors be submitted to a grand jury in an indictment." The cases cited by the State, however, address only whether a failure to include aggravating factors in an indictment is unconstitutional. They do not address the General Assembly's amendment of our sentencing laws in 2005 N.C. Sess. Laws 145, which included the addition of N.C. Gen. Stat. § 15A-1340.16(a4). *See State v. Hunt,* 357 N.C. 257, 274, 582 S.E.2d 593, 604 (2003) (*"Ring [v. Arizona,* 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428 (2002),] does not require that aggravating circumstances be alleged in state-court indictments."); *State v. Caudle,* 182 N.C. App. 171, 173, 641 S.E.2d 351, 352 (2007) (" '[T]he Fifth Amendment would not require aggravators, even if they were fundamental equivalents of elements of an offense, to be pled in a state-court indictment.' " (quoting *Hunt,* 357 N.C. at 272, 582 S.E.2d at 603)). These cases are, therefore, beside the point.

Because it is undisputed that the aggravating factors were not included in an indictment and the State has suggested no other basis for upholding the sentence below, we hold that the trial court erred under N.C. Gen. Stat. § 15A-1340.16(a4) in submitting the aggravating factors to the jury. We must, therefore, reverse and remand for resentencing.

Affirmed in part; reversed and remanded in part.

Judges BRYANT and BEASLEY concur.