STATE OF NORTH CAROLINA v. RICHARD LIONEL COOK

No. 341A07

(Filed 12 June 2008)

## 1. Appeal and Error— appealability—motion to dismiss— scope of dissent

Defendant's motion to dismiss the State's appeal in a second-degree murder case is denied even though defendant contends the State's briefed arguments exceed the scope of the dissent, because: (1) although the case cited by the State is distinguishable from the instant case, it involved the issues of unfair surprise and the trial court's denial of defendant's motion to exclude evidence when the State unexpectedly advised on the day of trial that it would present an expert on retrograde extrapolation; and (2) the State's arguments fall within the scope of the dissent.

## 2. Criminal Law— denial of motion to continue—abuse of discretion—harmless error

Although the trial court abused its discretion in a second-degree murder case by failing to grant a continuance based on the State's failure to provide sufficient notice of an expert witness, failure to provide sufficient notice of the nature of the expert testimony, and failure to provide a copy of the expert's retrograde extrapolation report within a reasonable time before trial, the error was harmless beyond a reasonable doubt because: (1) defendant's continuance motion only sought more time to prepare a defense for the expert's testimony; (2) even if a continuance had provided defendant sufficient time to muster resources to rebut the expert's testimony, the State had abundant other admissible evidence of defendant's impairment including witnesses who observed defendant's consumption of alcohol at a poker game; witnesses who saw defendant's erratic driving just before the crash; a paramedic in the ambulance who smelled alcohol on defendant's breath; defendant's admission to the paramedic that he had consumed alcohol; a physician's note on defendant's medical records that defendant was intoxicated; the results of two blood samples showing alcohol, amphetamines, and marijuana in defendant's system shortly after the wreck; and the notation in defendant's medical records on the morning after the crash that he admitted to alcohol and marijuana consumption; and (3) the trial court's instructions to the jury on second-

degree murder did not require the State to prove that defendant was impaired since the State could prove either reckless driving or speeding as an alternative to impairment, and numerous witnesses testified to defendant's erratic driving and speeding before the wreck. The ruling of the Court of Appeals remanding to the trial court for a hearing concerning the trial court's denial of defendant's motion to continue is vacated, and this case is remanded to the Court of Appeals for consideration of defendant's remaining assignments of error.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 184 N.C. App. 401, 647 S.E.2d 433 (2007), finding no error in part and remanding in part judgments entered 22 February 2006 by Judge J.B. Allen, Jr. in Superior Court, Alamance County. Heard in the Supreme Court 18 March 2008.

*Roy Cooper, Attorney General, by Isaac T. Avery, III, Special Counsel, for the State-appellant.*

*Constance E. Widenhouse, Assistant Appellate Defender, and Staples S. Hughes, Appellate Defender, for defendant-appellee.*

EDMUNDS, Justice.

In this case, we consider whether the trial court should have allowed defendant's motion for continuance when the State failed to provide timely discovery to defendant. Although we conclude the trial court abused its discretion in failing to grant a continuance, we hold that the error was harmless beyond a reasonable doubt. We vacate the ruling of the Court of Appeals remanding this case to the trial court for a hearing concerning the trial court's denial of defendant's motion to continue and remand this case to the Court of Appeals for consideration of defendant's remaining assignments of error.

At trial, the State presented evidence that, on the evening of 28 October 2004, defendant was playing poker and drinking alcoholic beverages with friends and coworkers. Although he initially accepted an offer from one of the other players for a ride to the hotel in Burlington where he was staying, defendant drove away from the game in his own car. Two witnesses testified that they later observed defendant's automobile speeding and moving erratically moments before the crash, swerving around other vehicles and veering onto the shoulder. Shortly after midnight on 29 October 2004, defendant crashed his vehicle into a car parked on the shoulder of Interstate

**STATE v. COOK**

[362 N.C. 285 (2008)]

40/85. Three men were sitting inside the parked car and as a result of the impact, Anibal Amaya Guevara was killed. The other two occupants, Adan Guerrero Rosales and Sergio Guerrero Rosales, suffered serious injuries.

Defendant complained of pain at the scene and was taken to a hospital. A paramedic in the ambulance smelled alcohol on defendant's breath and was advised by defendant that he had consumed a couple of beers. At the hospital, an emergency department physician wrote on defendant's medical records that defendant was "intoxicated." A blood sample drawn at 1:38 a.m. indicated that defendant had a blood alcohol concentration of 0.059 grams of alcohol per 100 milliliters of blood. The same toxicology screen also yielded a positive result for amphetamines and marijuana. A second blood sample, drawn at 3:00 a.m., showed defendant had a blood alcohol concentration of 0.03 grams of alcohol per 100 milliliters of blood. The hospital's medical records for defendant also included a 5:30 a.m. notation that defendant "[a]dmits to [alcohol] and cannabis."

On 14 February 2005, defendant was indicted for second-degree murder and two counts of assault with a deadly weapon inflicting serious injury, as well as for several other charges that were withdrawn before trial. On 23 March 2005, defendant filed a "Request for Voluntary Disclosure" pursuant to Article 48 of Chapter 15A of the North Carolina General Statutes, serving a copy on the Office of the District Attorney. In this request, defendant sought, among other things, the name and *curriculum vitae* of each expert witness the State intended to call, a concise and specific statement of each expert opinion the State intended to present, and the results of all reports of any scientific tests or studies made in connection with the case. Defendant filed a second similar discovery request on 19 January 2006.

The State retained Paul Glover as an expert witness in blood analysis and the effects of alcohol and drugs on human performance and behavior. Glover was a research scientist and training specialist employed by the Forensic Test for Alcohol Branch of the North Carolina Department of Health and Human Services. Before defendant's trial, Glover had testified approximately one hundred times in North Carolina courts regarding toxicology reports.

In a report dated 13 January 2006, Glover prepared a retrograde extrapolation of defendant's blood alcohol concentration at the time

**STATE v. COOK**

[362 N.C. 285 (2008)]

of the crash. Retrograde extrapolation is a mathematical analysis in which a known blood alcohol test result is used to determine what an individual's blood alcohol level would have been at a specified earlier time. The analysis determines the prior blood alcohol level on the bases of (1) the time elapsed between the occurrence of the specified earlier event (*e.g.*, a vehicle crash) and the known blood test, and (2) the rate of elimination of alcohol from the subject's blood during the time between the event and the test. Glover's initial retrograde extrapolation report for defendant utilized defendant's 3:00 a.m. blood test along with an average blood alcohol elimination rate of 0.0172 grams of alcohol per 100 milliliters of blood per hour. This analysis indicated that defendant's blood alcohol concentration was 0.08 grams of alcohol per 100 milliliters of blood at the time of the crash.

Defendant's trial had been set for Monday, 20 February 2006. On Wednesday, 15 February 2006, the State notified defendant that Glover would testify as an expert witness, supplying Glover's *curriculum vitae* but no other information. Two days later, on the afternoon of Friday, 17 February 2006, the State provided defendant with Glover's 13 January 2006 retrograde extrapolation report. The hearing transcript indicates that the prosecutor received the written report on that Friday.

Upon receiving the report, defendant immediately filed a motion to continue the trial for at least sixty days. Citing N.C.G.S. § 15A-903(a)(2), which regulates discovery of expert testimony, defendant argued that the State had failed to notify him of Glover's expert opinion within a reasonable time before trial. Defendant's counsel averred in the motion that he was unfamiliar with blood alcohol concentration retrograde extrapolation and that, as a result of the late notice, he lacked sufficient time to find and consult an expert for defendant.

The trial court heard defendant's motion to continue the following Monday. Although defense counsel stated to the court that he sought a continuance because he needed time to retain an expert, the discussion among the court, defense counsel, and the prosecutor focused almost entirely on the admissibility of retrograde extrapolation testimony and whether Glover could be recognized as an expert. After the court instructed the prosecutor that he could not discuss Glover's proposed testimony in his opening statement, the court denied defendant's motion to continue and the trial began.

Glover testified that he was able to calculate the specific rate at which defendant metabolized alcohol because defendant's blood was tested at two different times after the crash. Over defendant's objections, Glover testified that, by utilizing defendant's actual blood alcohol elimination rate of 0.0147 in lieu of an average blood alcohol elimination rate of 0.0172, he calculated defendant had a blood alcohol concentration of 0.07 at the time of the crash. This concentration level was lower than the 0.08 concentration Glover calculated in his January 2006 report, which had been based on a single blood test and an average rate of elimination. Glover further testified that the toxicology screen showed both amphetamines and marijuana in defendant's blood system. In Glover's expert opinion, the combination of alcohol, amphetamines, and marijuana in defendant's system could have a synergistic effect, increasing defendant's impairment.

Defendant presented no evidence. The jury found defendant guilty of second-degree murder and both counts of assault with a deadly weapon inflicting serious injury. The trial court sentenced defendant to consecutive prison terms of 176 to 221 months for second-degree murder and 27 to 42 months for each count of assault. Defendant appealed his second-degree murder conviction to the Court of Appeals, arguing in part that the trial court abused its discretion by denying his motion to continue.

In a divided opinion, the Court of Appeals found no error in part and remanded in part. In its mandate remanding the case, the majority instructed the trial court to hold a hearing to make findings of fact and conclusions of law concerning, among other things, whether the State complied with N.C.G.S. § 15A-903 ("Disclosure of evidence by the State-Information subject to disclosure") and N.C.G.S. § 15A-907 ("Continuing duty to disclose") when it provided Glover's *curriculum vitae* and retrograde extrapolation report. *State v. Cook*, 184 N.C. App. 401, 410-11, 647 S.E.2d 433, 439 (2007). The dissenting judge believed this issue was controlled by a prior Court of Appeals opinion, *State v. Fuller*, 176 N.C. App. 104, 626 S.E.2d 655 (2006), and accordingly would have affirmed the trial court's denial of the motion to continue. *Cook*, 184 N.C. App. at 413, 647 S.E.2d at 439-40 (Wynn, J., dissenting). The majority preserved defendant's remaining assignments of error for consideration after the trial court's hearing and entry of order on remand. *Id.* at 411, 647 S.E.2d at 439.

[1] The State appeals to this Court as of right on the basis of the dissent, arguing that the Court of Appeals erred by remanding the case

for a hearing on the trial court's denial of defendant's motion to continue. In response, defendant initially contends that the State's appeal should be dismissed because the State's briefed arguments exceed the scope of the dissent, which focused on whether the Court of Appeals holding in *Fuller* controlled this case. In addition, defendant filed with this Court a separate "Motion To Dismiss State's Appeal Or, In The Alternative, To Strike The State's Brief," repeating the arguments made in its brief concerning the scope of the State's appeal. Although *Fuller* is distinguishable from the case at bar, *Fuller* involved issues of unfair surprise and the trial court's denial of the defendant's motion to exclude evidence when the State unexpectedly advised on the day of trial that it would present an expert on retrograde extrapolation. We conclude that the State's arguments fall within the scope of the dissent and deny defendant's motion to dismiss the State's appeal.

[2] Defendant contends the State, within a reasonable time before trial, failed to provide sufficient notice that Glover would be called as an expert witness, failed to provide sufficient notice of the nature of Glover's expert testimony, and failed to provide a copy of Glover's retrograde extrapolation report. Defendant maintains that he was prejudiced both by the State's late provision of discovery and by the court's denial of his motion to continue. As to each issue, defendant presents arguments based on state and federal constitutional grounds and on statutory grounds.

Turning first to defendant's contentions concerning the timeliness of the discovery, his rights to discovery are statutory. Constitutional rights are not implicated in determining whether the State complied with these discovery statutes. "There is no general constitutional or common law right to discovery in criminal cases." *State v. Haselden*, 357 N.C. 1, 12, 577 S.E.2d 594, 602 (citations omitted), *cert. denied*, 540 U.S. 988, 157 L. Ed. 2d 382 (2003); *see also Weatherford v. Bursey*, 429 U.S. 545, 559, 51 L. Ed. 2d 30, 42 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one . . . ."). We will address defendant's constitutional arguments below when we consider whether he was prejudiced by the trial court's denial of his motion for a continuance.

The discovery process for criminal cases within the original jurisdiction of our superior courts is governed by Article 48 of Chapter 15A of the North Carolina General Statutes. N.C.G.S. § 15A-901

(2007). Before filing a motion for discovery "before a judge," a defendant must make a written request for voluntary discovery from the State. *Id.* § 15A-902(a) (2007). If the State voluntarily complies with the discovery request, "the discovery is deemed to have been made under an order of the court," *id.* § 15A-902(b) (2007), and the State then has a continuing duty to disclose additional evidence or witnesses:

> If a party, who is required to give or who voluntarily gives discovery pursuant to this Article, discovers prior to or during trial additional evidence or witnesses, or decides to use additional evidence or witnesses, and the evidence or witness is or may be subject to discovery or inspection under this Article, the party must promptly notify the attorney for the other party of the existence of the additional evidence or witnesses.

*Id.* § 15A-907 (2007).

Here, defendant filed two requests for voluntary discovery. Because the record indicates that the State thereafter voluntarily provided some timely discovery pursuant to N.C.G.S. § 15A-902(a), it was obligated to provide discovery as to its expert witness and the expert's report, pursuant to N.C.G.S. § 15A-903(a)(2) and (b). Section 15A-903(a)(2) governs the State's disclosure of expert witnesses and any reports made by such witnesses. Specifically, the State must:

> (2) Give notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial. Each such witness shall prepare, and the State shall furnish to the defendant, a report of the results of any examinations or tests conducted by the expert. The State shall also furnish to the defendant the expert's curriculum vitae, the expert's opinion, and the underlying basis for that opinion. *The State shall give the notice and furnish the materials required by this subsection within a reasonable time prior to trial,* as specified by the court.

*Id.* § 15A-903(a)(2) (2007) (emphasis added). In discussing a previous version of this statute, we stated that " '[t]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate.' " *State v. Murillo,* 349 N.C. 573, 585, 509 S.E.2d 752, 759 (1998) (quoting *State v. Patterson,* 335 N.C. 437, 455, 439 S.E.2d 578, 589 (1994)), *cert. denied,* 528 U.S. 838, 145 L. Ed. 2d 87 (1999).

We conclude the State violated N.C.G.S. § 15A-903(a)(2) when it failed to furnish defendant with sufficient notice within a reasonable time prior to trial. Once the voluntary discovery process began when defendant made his first request for voluntary discovery on 23 March 2005 and the State initiated its response, a continuing duty arose and lasted throughout the trial requiring the State to disclose additional evidence or witnesses. N.C.G.S. § 15A-907 (stating the continuing duty to "promptly notify" the opposing party of additional evidence or witnesses persists "prior to or during trial"). Although Glover's report was completed five weeks before trial was scheduled to begin, the State failed to provide notice that it planned to call Glover as a witness until five days before trial. Even then, the State provided only Glover's *curriculum vitae*, which was insufficient to put defendant on notice of the State's intent to use blood alcohol concentration retrograde extrapolation evidence at trial.

Not until the afternoon of 17 February 2006 did the State furnish Glover's report to defendant. Although the prosecutor apparently provided the report as soon as it was received in the District Attorney's office, N.C.G.S. § 15A-903(a)(2) requires that the State's expert witnesses "shall prepare, and the State shall furnish to the defendant, a report of the results of any examination or tests conducted by the expert." The record reveals that approximately five weeks elapsed between the preparation of the report and its disclosure to defendant the Friday before trial. Only upon receipt of the report did defendant learn he would be facing retrograde extrapolation testimony. Defendant then had just a weekend to find his own expert in this field and to decide whether to call such a witness to counter the State's evidence. Thus, under the facts of this case, the State's last-minute piecemeal disclosure of its expert's name, *curriculum vitae*, and written report was not "within a reasonable time prior to trial" as required by N.C.G.S. § 15A-903(a)(2).

The State nevertheless argues that this statute does not apply because it is "unclear" whether blood alcohol concentration retrograde extrapolation requires expert testimony since the extrapolation is performed by a "simple mathematic formula." If the process does not require an expert, the result is not an examination or test subject to discovery under N.C.G.S. § 15A-903(a)(2).

This argument is undermined by the State's pretrial conduct. The State provided Glover's name, *curriculum vitae*, and report to defendant and filed a corresponding "discovery certificate" with the trial court, just as it would with any other expert witness. In addition,

unlike its lay witnesses, the State qualified Glover on *voir dire* as an expert on "blood alcohol physiology, pharmacology, and the effects of drugs on human performance and behavior" and questioned Glover on direct examination regarding his "specialty" and "specialized degrees or training experience." Moreover, North Carolina courts have consistently regarded blood alcohol retrograde extrapolation as the domain of expert witnesses. *See, e.g., State v. Davis,* 142 N.C. App. 81, 89-90, 542 S.E.2d 236, 241 (examining the "expert testimony" of a toxicologist under the standard of *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 125 L. Ed. 2d 469 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 143 L. Ed. 2d 238 (1999), and noting "[w]e have accepted the reliability of extrapolation evidence since 1985"), *disc. rev. denied,* 353 N.C. 386, 547 S.E.2d 818 (2001); *State v. Catoe,* 78 N.C. App. 167, 168-69, 336 S.E.2d 691, 692-93 (1985) (holding blood alcohol concentration retrograde analysis admissible when a "qualified expert" gave "opinion testimony on scientific matters" and noting the "simple mathematical extrapolation" performed), *disc. rev. denied,* 316 N.C. 380, 344 S.E.2d 1 (1986).

Relying on the dissent in the Court of Appeals, the State also argues that *State v. Fuller,* 176 N.C. App. 104, 626 S.E.2d 655 (2006), should have controlled. In *Fuller,* the defendant pled guilty in district court to driving while impaired, then appealed to the superior court for trial de novo. *Id.* at 107, 626 S.E.2d at 657. On the morning of trial, the State gave notice to the defendant that it intended to call an expert witness on blood alcohol concentration retrograde extrapolation. *Id.* The trial court denied the defendant's motion to prevent the State from calling the expert witness and the Court of Appeals found no error. 176 N.C. App. at 107-08, 626 S.E.2d at 657-58.

*Fuller* is distinguishable from the case at bar. The statutory discovery requirements at issue here were inapplicable in *Fuller* because, as the *Fuller* court itself noted, these discovery statutes apply only to cases within the original jurisdiction of the superior court. *Id.* at 107-08, 626 S.E.2d at 657; N.C.G.S. § 15A-901. Moreover, the defendant in *Fuller* attempted to have the expert's testimony excluded outright. Here, in contrast, defendant instead sought only a continuance to prepare for Glover's testimony. Accordingly, the Court of Appeals panel was not bound by the holding in *Fuller.*

The State points out that the Court of Appeals noted in *Fuller* that the defendant "was on notice that [extrapolation] evidence might be offered" in the superior court trial because extrapolation evidence "has been accepted in this State since 1985." *Id.* at 108, 626 S.E.2d at

657. The State now adopts this approach and argues defendant "should have known" extrapolation evidence would be presented because the Court of Appeals in *Catoe* first approved admission of such evidence in 1985, and defendant "cannot close his eyes and hope the State will not offer certain testimony."

This argument echoes our statement in *Murillo* that "[t]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence *he cannot anticipate*." 349 N.C. at 585, 509 S.E.2d at 759 (emphasis added). Here, defendant had no effective ability to "anticipate" the evidence, as that term is used in *Murillo*. For example, while a defendant in a burglary or forgery case reasonably might anticipate the State will use fingerprint evidence, the defendant can do little to prepare to confront that evidence until he or she has seen the latent prints the State intends to use and copies of the report prepared by the State's expert. Similarly here, defendant's mere knowledge that the process of retrograde extrapolation existed did not require him to anticipate that the State would pursue this line of inquiry, retain an expert, and present such evidence. Even if defendant foresaw that the State would present such evidence, he had virtually no ability to prepare an effective response until he knew the result of the State's testing.

Defendant argues that no statute under Article 48 provides exceptions under which the State can fail to comply with the discovery statutes and rely on defendant's educated guess as to what evidence the State will present. This argument is persuasive. The language of N.C.G.S. § 15A-903(a)(2) is mandatory, providing that once voluntary discovery is initiated, the State "must" "[g]ive notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial." Each expert witness "shall prepare" and the State "shall furnish" a report of any examinations or tests conducted by the expert. The State "shall furnish" an expert's *curriculum vitae* and opinion "within a reasonable time prior to trial." The State's proposed exception to these statutory provisions, if accepted, would invite sandbagging.

Although we conclude that the State violated the pertinent discovery statutes, defendant moved for a continuance without seeking more severe sanctions for the violation. The trial court has discretionary power under N.C.G.S. § 15A-910(a)(2) to "[g]rant a continuance or recess" if a party fails to comply with the discovery statutes. *Id.* § 15A-910(a)(2) (2007). "Determining whether the State failed to comply with discovery is a decision left to the sound discretion of the

trial court." *State v. Jackson*, 340 N.C. 301, 317, 457 S.E.2d 862, 872 (1995) (citation omitted). "The trial court may be reversed for an abuse of discretion in this regard only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Carson*, 320 N.C. 328, 336, 357 S.E.2d 662, 667 (1987) (citation omitted).

After careful consideration, we conclude that the trial court's denial of defendant's motion to continue was an abuse of discretion. As noted above, defendant's motion was filed the Friday before trial and heard the day the trial was scheduled to begin. Defendant's written motion cited N.C.G.S. § 15A-903, and at the hearing defense counsel advised the trial court, "I don't believe I had sufficient time . . . to retain an expert on Mr. Cook's behalf." Nevertheless, the participants in the hearing focused almost entirely on whether Glover could be qualified as an expert and whether testimony based upon blood alcohol concentration retrograde extrapolation had been found admissible in previous cases. Distracted by these questions, the trial court made no mention during the hearing of the discovery statutes nor of the timeliness of the notice to defendant. Once the trial court determined that the evidence was admissible, it denied defendant's motion. We are satisfied that a continuance would have alleviated any "unfair surprise" to defendant, *Murillo*, 349 N.C. at 585, 509 S.E.2d at 759, and would have "afforded the defense opportunity to meet [the State's] evidence," *Jackson*, 340 N.C. at 317, 457 S.E.2d at 872. Accordingly, we hold that the trial court abused its discretion in denying defendant's motion to continue.

In so holding, we are not establishing a bright line rule automatically mandating a continuance whenever a party is untimely in providing discovery. The pertinent statute itself only requires disclosure "within a reasonable time prior to trial, as specified by the court." N.C.G.S. § 15A-903(a)(2). Often, as here, a party providing discovery only a short time before trial has just received it and is disclosing it immediately. We acknowledge that trial judges must have substantial latitude to deal with the myriad unforeseeable circumstances that arise during the course of litigation. The trial court here faced a familiar but difficult decision where the motion had to be considered while the jury pool waited. Nevertheless, the information was prepared by the State's expert weeks before trial but was only revealed to defendant at the eleventh hour. The hearing transcript indicates that, even before receiving Glover's written report, the prosecutor planned to use retrograde extrapolation analysis, though no notice had been pro-

vided to defendant. The furnishing to defendant of Glover's *curriculum vitae* the Wednesday before trial was, standing alone, insufficient to put defendant on notice of the type of expert testimony he faced. While we are sympathetic to the trial court's dilemma, we believe that, in the absence of a satisfactory explanation in the record for the delay between the State's expert's preparation of the report and its provision to defendant by the prosecutor, the trial court should have allowed a continuance. In so holding, we express no opinion as to an appropriate duration, a matter best left to the discretion of the trial court.

We next consider whether defendant was prejudiced by the error. Defendant raises the constitutional issues noted above, contending that the denial of his motion to continue violated his due process and confrontation rights under the United States and North Carolina Constitutions because "[i]mplicit in these constitutional provisions is the requirement that an accused have a reasonable time to investigate, prepare and present his defense." *State v. Tunstall*, 334 N.C. 320, 328, 432 S.E.2d 331, 336 (1993) (citations and internal quotation marks omitted). However, "[t]he denial of a motion to continue, even when the motion raises a constitutional issue, is grounds for a new trial only upon a showing by the defendant that the denial was erroneous and also that his case was prejudiced as a result of the error." *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982) (citation omitted). Therefore, even though we have concluded that the trial court erred in denying defendant's motion to continue, the error is subject to harmless error analysis. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." N.C.G.S. § 15A-1443(b) (2007).

Here, even if we assume without deciding that defendant's constitutional rights were violated by the denial of a continuance, the record demonstrates that the error was harmless beyond a reasonable doubt. *See State v. Gardner*, 322 N.C. 591, 595, 369 S.E.2d 593, 596 (1988) ("Assuming without deciding that the error complained of is of constitutional dimension, we are satisfied that the error was harmless beyond a reasonable doubt."). Defendant's continuance motion only sought more time to prepare a defense for Glover's testimony. However, even if a continuance had provided defendant sufficient time to muster resources to rebut Glover's testimony utterly, the State had abundant other admissible evidence of defendant's impairment, including witnesses who observed defendant's consumption of

alcohol at the poker game; witnesses who saw defendant's erratic driving just before the crash; a paramedic in the ambulance who smelled alcohol on defendant's breath; defendant's admission to the paramedic that he had consumed alcohol; a physician's note on defendant's medical records that defendant was "intoxicated"; the results of two blood samples showing alcohol, amphetamines, and marijuana in defendant's system shortly after the wreck; and the notation in defendant's medical records on the morning after the crash that he admitted to alcohol and marijuana consumption. Glover's extrapolation testimony was but a thread in the web of evidence presented by the State.

In addition, the trial court's instructions to the jury on second-degree murder did not require the State to prove that defendant was impaired. The court followed the pattern instruction on second-degree murder by motor vehicle and listed impairment as one of several methods of satisfying the element of the offense that defendant violated a law governing the operation of a motor vehicle. The pertinent instructions were:

> Now, I charge you for you to find the defendant, Richard Cook, guilty of second degree murder, the State must prove six things beyond a reasonable doubt.
>
> . . . .
>
> Fourth, that the defendant violated the following law or laws of this State governing the operation of the motor vehicle.
>
> The law of this State makes it unlawful to drive while impaired, to drive recklessly and [to] exceed the posted speed limit. For you to find the defendant guilty of impaired driving, the State must prove these things beyond a reasonable doubt. That the defendant was driving a vehicle. That he was driving the vehicle on a highway within the State. And that at the time the defendant was driving that vehicle, he was either: (A) Was under the influence of an impairing [substance]. Alcohol is an impairing substance. Amphetamines is an impairing substance. Marijuana is an impairing substance.
>
> . . . .
>
> Or (B) The defendant had consumed sufficient alcohol at any relevant time after the driving the defendant had an alcohol concentration of .08 or more grams of alcohol in his blood. . . .

Now, for you to find the defendant guilty of reckless driving, the State must prove two things. That the defendant drove a vehicle on a highway. I-40/I-85 in Alamance County is a highway.

And second, that he drove that vehicle on I-85/I-40 by speeding, running another vehicle off the road, and hitting a parked vehicle in the emergency lane. And in so doing, he acted carelessly and heedlessly in willful or wanton disregard to the rights or safety of others.

And for you to find the defendant guilty. of exceeding the posted speed limit, the State must prove beyond a reasonable doubt that the defendant drove a vehicle on a highway in this State at a speed exceeding the posted speed limit.

Thus, to establish the fourth element, the State could prove either reckless driving or speeding as an alternative to impairment. As detailed above, numerous witnesses testified to defendant's erratic driving and speeding before the wreck. Accordingly, the State was not limited to proof that defendant was impaired to secure a conviction of second-degree murder by vehicle.

We find beyond a reasonable doubt that the trial court's denial of defendant's motion to continue was harmless error. Although the State violated N.C.G.S. § 15A-903(a)(2) when it failed to provide defendant with the required information "within a reasonable time prior to trial," and the trial court abused its discretion in failing to grant defendant's motion to continue the trial, defendant suffered no prejudice.

We reverse the decision of the Court of Appeals as to the appealable issue of right, that is, whether the Court of Appeals erred in remanding this case to the trial court for a hearing on the trial court's denial of defendant's motion to continue, and we vacate the Court of Appeals remand to the trial court. The remaining issues addressed by the Court of Appeals in its opinion are not properly before this Court and its decision as to these issues remains undisturbed. This case is remanded to the Court of Appeals for consideration of defendant's remaining assignments of error.

REVERSED IN PART AND REMANDED.