IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-525

No. COA21-83

Filed 2 August 2022

Edgecombe County, Nos. 18 CRS 52623; 18 CRS 52631

STATE OF NORTH CAROLINA,

v.

RANDALL LEE JOYNER


Appeal by Defendant from judgments entered 5 February 2020 by Judge Leonard L. Wiggins in Edgecombe County Superior Court. Heard in the Court of Appeals 30 November 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Llogan R. Walters, for the State.*

*Jason Christopher Yoder, for the Defendant.*


WOOD, Judge.

¶ 1        Randall Joyner ("Defendant") appeals from judgments for conviction of obtaining property by false pretenses and exploitation of a disabled or elderly person while in a business relationship. On appeal, Defendant argues the trial court erred 1) by admitting Margaret Meeks's ("Meeks") former testimony and a no-contact order into evidence and 2) by denying his motion to allow him to inspect, examine, and photograph the crime scene. After a careful review of the record and applicable law,

we discern no error.

## I. Factual and Procedural Background

On November 10, 2018, Defendant approached Meeks at her home and offered to perform home improvement work. At the time, Meeks was 88 years of age and lived alone. Meeks agreed and hired Defendant to do some painting and to clean out the gutters at her home. Defendant began work the same day. Defendant said he saw "something laying in the gutter" which appeared to be rotten wood. Defendant took pictures and showed both the pictures and the "rotten wood" to Meeks, explaining to her that she needed to have her roof repaired. After seeing the photos and rotten wood, Meeks hired Defendant to repair her roof.

That same day, Defendant presented Meeks with a "Contractors Invoice" itemizing the needed roof work, totaling $1,500.00. The "Description of Work Performed" section of the invoice, stated, in relevant parts:

> [1.] Remove shingles on left front of home.
>
> [2.] Remove drip edge on left front of home.
>
> [3.] Remove rotten sheeting on left front of home.
>
> [4.] Remove shingles in valley on left front of home.
>
> . . .
>
> [5.] Install new shingles where removed.
>
> [6.] Install new sheeting where removed.

Meeks paid $750.00 upfront towards the invoice.

¶ 4 After Defendant had finished working on her roof, Meeks contacted Defendant again, requesting him to return to her home to fix an issue with her toilet. Upon arrival, Defendant inspected Meeks's toilet. He concluded the toilet was broken and was causing water damage underneath her house. At the time, Defendant did not have a plumber's license. On November 13, 2018, Defendant presented a second invoice to Meeks for the proposed work on her bathroom in the amount of $2,200.00. Under its "Description of Work Performed" section, Defendant represented that he would:

> [1.] Remove installation where needed under bathroom.
>
> [2.] Disconnect and remove leaking plumbing pipe.
>
> [3.] Cut and install plywood subfloor under bathroom where needed.
>
>  . . .
>
> [5.] Install new sewer line where removed.
>
> [6.] Install new installation under bathroom[.]

Meeks paid the full amount of the second invoice to Defendant up front, and he left Meeks's home to obtain construction materials for the second project.

¶ 5 Officer D.L. Bailey of the Tarboro Police Department ("Officer Bailey") was monitoring traffic that afternoon in the vicinity of Meeks's home. Officer Bailey recognized and performed a routine license plate check on Defendant's vehicle.

Officer Bailey concluded Defendant "wasn't operating on an active license" and initiated a traffic stop. During the traffic stop, Defendant explained he was doing repair work in the area, at the end of Brandon Avenue. Officer Bailey did not have any knowledge about who specifically lived in the area of Brandon Avenue but was aware it was "predominantly an elderly neighborhood." After Officer Bailey finished Defendant's traffic stop, he looked into Defendant's criminal history and discovered Defendant had previous charges for obtaining property by false pretenses, defrauding the elderly, and breaking and entering.

¶ 6          Because of Defendant's criminal history and his statement to Officer Bailey that he was working on repairs to a house at the end of Brandon Avenue, Officer Bailey decided to visit the house and inquire about the work Defendant was performing. During his inquiry, Meeks told Officer Bailey that Defendant had been performing roof and flooring work for her. Meeks also stated she was "not really able to tell what's going on . . . [and] just paid the bills."

¶ 7          After speaking with Meeks, Officer Bailey contacted the town's building inspector Alan Davis ("Davis"), to get a professional opinion about whether Defendant had performed the work as represented to Meeks. That same day, Davis came to Meeks's house and inspected underneath her house. Davis did not discover "any rot on the structural [area of the house or], the floor joist[,] . . . [and] did not see anything wrong with the water lines, the supply or drain waste." Furthermore, Davis flushed

Meeks's toilet and "didn't see any water leaking . . . or anything . . . that would suggest a water leak." Defendant returned to Meeks's house during Officer Bailey's investigation and was taken into custody.

¶ 8 After Defendant was taken into custody, Meeks asked Wayne Scott, later qualified by the trial court as an expert in roofing repair and insulation, to inspect the roof of her house. Scott reported that he did not see any evidence new shingles had been installed, rotten wood had been removed, or any work had been done to prevent damage. Although Scott did observe minimal work had been performed on Meeks's roof, he estimated the value of the work to be $300.00.

¶ 9 On November 16, 2018, Defendant's mother went to Meeks's home, presented a pre-drafted affidavit, and had Meeks sign it. This pre-drafted affidavit stated:

> This statement is in reference to the work I hired Mr. Randall L. Joyner to do. Mr. Joyner cleaned my gutters. Mr. Joyner kindly informed me of some rotten wood that he noticed on my roof. Mr. Joyner showed me the rotten wood that he was referring to. I asked Mr. Joyner to fix it. Mr. Joyner and I agreed on a price. I saw the rotten wood that Mr. Joyner removed and I saw the new wood he replaced along with my shingles.

The pre-drafted affidavit Defendant's mother presented to Meeks misspelled her name as "Weeks." The pre-drafted affidavit was subsequently notarized.

¶ 10 On January 14, 2019, Defendant was indicted for obtaining property by false pretenses and exploitation of an older adult or disabled adult while in a business

relationship. Afterwards, Meeks filed an action for a civil no-contact order against Defendant. Defendant was properly served with a complaint for and a notice of the hearing for the civil no-contact order but chose not to appear. Defendant's attorney noted that Defendant "didn't really care" that the court had conducted the no-contact order hearing in Defendant's absence. On March 11, 2019, the district court entered a civil no-contact order against Defendant, prohibiting him from communicating with Meeks. On September 16 and September 23, 2020, Defendant filed motions with the trial court seeking permission to inspect Meeks's property. The trial court denied Defendant's motions on October 1, 2019. Seven days later, on October 8, 2019, Meeks passed away. Thereafter, the trial court entered an order permitting Meeks's testimony from the hearing for the civil no-contact order to be admitted at Defendant's criminal trial.

¶ 11 Defendant's criminal trial was held February 3 to February 5, 2020. The jury found Defendant guilty of obtaining property by false pretenses and exploitation of an older adult by a person in a business relationship. The trial court imposed an active sentence of 15 to 27 months for the offense of obtaining property by false pretenses and 15 to 27 months for exploitation of an older adult by a person in a business relationship upon Defendant to be served consecutively. Defendant gave notice of appeal in open court.

## II. Discussion

¶ 12    Defendant raises multiple issues on appeal; each will be addressed in turn.

**A. Confrontation Clause**

¶ 13    Defendant first argues the trial court erred by admitting Meeks's former testimony from the civil court hearing on the no-contact order and the no-contact order because it violated his constitutional right to cross-examine and confront his accuser.  We disagree.

¶ 14    We review an alleged violation of a defendant's constitutional right to confrontation *de novo*.  *State v. Glenn*, 220 N.C. App. 23, 25, 725 S.E.2d 58, 60–61 (2012); *see State v. Hurt*, 208 N.C. App. 1, 6, 702 S.E.2d 82, 87 (2010).  "Under a *de novo* review, the Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Peninsula Prop. Owners Ass'n v. Crescent Res., LLC*, 171 N.C. App. 89, 92, 614 S.E.2d 351, 353 (2005) (internal brackets omitted) (citing *In re Greens of Pine Glen*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

¶ 15    The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see Pointer v. Texas*, 380 U.S. 400, 405, 85 S. Ct. 1065, 1068, 13 L. Ed. 2d 923, 927 (1965) ("[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.").  Courts have generally acknowledged "an exception to the confrontation requirement where a witness is unavailable and has given

testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Barber v. Page*, 390 U.S. 719, 722, 88 S. Ct. 1318, 1320, 20 L. Ed. 2d 255, 258 (1968); *see Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177, 197 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."); *State v. Graham*, 303 N.C. 521, 523, 279 S.E.2d 588, 590 (1981); *State v. Tate*, 187 N.C. App. 593, 600, 653 S.E.2d 892, 897 (2007).

¶ 16 When determining if prior testimony is admissible as an exception to the Confrontation Clause, we look to see "(1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant." *State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217 (2004) (citation omitted); *see State v. Brigman*, 171 N.C. App. 305, 309, 615 S.E.2d 21, 23 (2005).

¶ 17 Defendant does not dispute Meeks's prior testimony "was testimonial in nature" or that the "the declarant was unavailable." *Clark*, 165 N.C. App. at 283, 598 S.E.2d at 217. Instead, he simply argues he did not have a meaningful opportunity to cross-examine Meeks because the only issue presented at the no-contact hearing was whether Defendant had been stalking Meeks, not the criminal charges at issue

in this case. We disagree with Defendant's argument.

¶ 18 In examining the third prong of the *Clark* test, we note the "main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347, 353 (1974) (emphasis omitted); *accord State v. Jones*, 89 N.C. App. 584, 587, 367 S.E.2d 139, 142 (1988), *overruled in part on other grounds by State v. Hinnant*, 351 N.C. 277, 523 S.E.2d 663 (2000). In *State v. Ross*, we addressed whether the defendant had a meaningful opportunity to cross-examine a witness at a probable cause hearing when the various charges against the defendant had yet to be joined. *State v. Ross*, 216 N.C. App. 337, 345, 720 S.E.2d 403, 408 (2011). We held the trial court did not err by admitting the witness's testimony because the charges addressed at the probable cause hearing were the same as those on which the jury ultimately found the defendant guilty. *Id.* at 345–46, 720 S.E.2d at 409. In other words, the defendant's "motive to cross-examine" the witness at the probable cause hearing was the "same as his motive at trial." *Id.* at 345, 720 S.E.2d at 409.

¶ 19 Therefore, when the trial court provides a defendant with the opportunity to cross-examine a witness, and the defendant in turn waives this opportunity, he may not later argue his right to confrontation has been violated. *See Brookhart v. Janis*, 384 U.S. 1, 4, 86 S. Ct. 1245, 1247, 16 L. Ed. 2d 314, 317 (1966); *State v. Moore*, 275 N.C. 198, 209, 166 S.E.2d 652, 660 (1969); *State v. Harris*, 181 N.C. 600, 605, 107 S.E.

466, 468 (1921). For a waiver of one's right to confrontation to be effective, it "must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' " *Brookhart*, 384 U.S. at 4, 86 S. Ct. at 1247, 16 L. Ed. 2d at 317 (quotation omitted). A defendant may waive his right to confrontation expressly or may waive his right implicitly by conduct.

¶ 20 Justice Alito's concurrence in the recent case of *Hemphill v. New York* provides several examples of ways in which a defendant can impliedly waive his right to confrontation. A defendant may impliedly waive his right when he "engages in a course of conduct that is incompatible with a demand to confront adverse witnesses" such as by being "disorderly, disruptive, and disrespectful of the court." *Hemphill v. New York*, 142 S. Ct. 681, 694, 211 L. Ed. 2d 534, 549 (2022) (Alito, J., concurring) (quoting *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 1060, 25 L. Ed. 2d 353, 359 (1970)). A defendant may impliedly waive his right when he "fail[s] to object to the offending evidence." *Id.* (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314, n. 3, 129 S. Ct. 2527, 2534, 174 L. Ed. 2d 314, 323 (2009)); *see also State v. Calhoun*, 189 N.C. App. 166, 168, 657 S.E.2d 424, 426 (2008). Further, a defendant may impliedly waive his right when he introduces incomplete evidence that opposing counsel may further develop under the evidentiary rule of completeness regardless of the evidence's testimonial nature. *Hemphill*, 142 S. Ct. at 695, 211 L. Ed. 2d at 549. In any of these examples, the defendant would not need to make an explicit waiver of

his rights. Instead, "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 694, 211 L. Ed. 2d at 549 (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 385, 130 S. Ct. 2250, 2262, 176 L. Ed. 2d 1098, 1113 (2010)).

¶ 21        The same is true when a defendant chooses not to cross-examine a witness. It is important to remember that the *Crawford* test may be met by merely providing the defendant an *opportunity* to cross-examine the accusing witness. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 2d 15, 19 (1985). To hold otherwise, "defendants could require exclusion of prior [testimonial] statements . . . by refusing to cross-examine" witnesses who would not later be available. Christopher B. Mueller, *Cross-Examination Earlier or Later: When is it Enough to Satisfy Crawford?*, 19 Regent U. L. Rev., 319, 334 (2007). A defendant may have a legitimate, tactical reason for not wanting to cross-examine a witness or not attending a hearing. Yet, even then, if a defendant chooses not to cross-examine a witness but has been provided an opportunity to do so, the defendant's right to confront his accuser is preserved, and *Crawford* is not transgressed. *See generally* Kenneth H. Hanson, *Waiver of Constitutional Right of Confrontation*, 39 J. Crim. L. & Criminology, 55, 57 (1948) ("Since the accused was afforded but failed to take advantage of an opportunity to meet the witnesses who testified against him, he had

waived his constitutional privilege.")

¶ 22 Here, Defendant was properly served with notice of the hearing on the civil no-contact order but did not "care" to appear at the hearing. The no-contact order demonstrates that the same issues presented at the hearing were the issues subsequently presented at Defendant's criminal trial. These are the same issues and facts from which the jury ultimately found Defendant guilty of obtaining property by false pretenses and exploitation of an elderly person while in a business relationship in his criminal trial. As such, Defendant's "motive to cross-examine" Meeks at the no-contact hearing "would have been the same as his motive at trial." *Ross*, 216 N.C. App. at 345, 720 S.E.2d at 409. Thus, Defendant was provided with a meaningful opportunity to cross-examine Meeks at the hearing on the civil no contact order. He chose not to cross-examine Meeks when he did not attend the hearing. He may not now allege a violation of his right to confrontation. He has impliedly waived that right. Therefore, we adopt the reasoning of Justice Alito in *Hemphill* and hold the trial court did not violate Defendant's right to confrontation when it allowed Meeks's prior testimony and the no-contact order into evidence.

## B. Hearsay

¶ 23 Defendant next contends Meeks's prior statements were inadmissible hearsay under N.C. Gen. Stat. § 8C-1, Rule 804(b)(1). "This Court reviews a trial court's ruling on the admission of evidence over a party's hearsay objection *de novo*." *State v. Hicks*,

243 N.C. App. 628, 638, 777 S.E.2d 341, 348 (2015) (citing *State v. Miller*, 197 N.C. App. 78, 87, 676 S.E.2d 546, 552 (2009)); *see State v. Castaneda*, 215 N.C. App. 144, 147, 715 S.E.2d 290, 293 (2011). "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2021). Generally, hearsay is inadmissible at trial unless an exception to Rule 801(c) applies. *Hicks*, 243 N.C. App. at 639, 777 S.E.2d at 348.

¶ 24      Such a hearsay exception exists when a declarant is unavailable. N.C. Gen. Stat. § 8C-1, Rule 804 (2021). A witness is considered "unavailable" if the witness is "unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." N.C. Gen. Stat. § 8C-1, Rule 804(a)(4). An unavailable witness's former testimony is admissible when the testimony was

> given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

N. C. Gen. Stat. § 8C-1, Rule 804(b)(1).

¶ 25      In the present case, Meeks was unavailable under Rule 804(a)(4) because she died prior to Defendant's criminal trial. Concerning Rule 804(b)(1), as our analysis above indicates, the no-contact hearing dealt with the same issues and facts that were

the subject of Defendant's criminal trial. Because of this, Defendant had a similar opportunity to ask Meeks questions regarding the facts and issues that were the subject of his criminal trial at the civil hearing. Thus, we conclude Defendant had "a similar motive to develop [Meeks's] testimony by direct, cross, or redirect examination" at the civil hearing on the no-contact order as he would have possessed at the criminal trial. N.C. Gen. Stat. § 8C-1, Rule 804(b)(1). Accordingly, we hold the trial court did not violate Rule 804(b)(1) by admitting Meeks's prior testimony at trial.

**C. N.C. Gen. Stat § 1-149**

Defendant next contends the trial court's admission of the no-contact order violated N.C. Gen. Stat. § 1-149. We disagree.

Defendant concedes he did not object to the admission of the no-contact order under N.C. Gen. Stat. § 1-149 and therefore waived his right to appeal pursuant to N.C. Gen. Stat. § 1-149. *State v. Young* 368 N.C. 188, 209, 775 S.E.2d 291, 305 (2015) ("[W]e hold that . . . N.C.G.S. § 1-149 is not a 'mandatory' statute the violation of which is cognizable on appeal despite the absence of an objection in the trial court."). Because Defendant waived his right to appeal this argument, we must analyze his argument under the plain error standard of review. *See State v. Koke*, 264 N.C. App. 101, 107, 824 S.E.2d 887, 891 (2019) ("Where a defendant fails to preserve errors at trial, this Court reviews any alleged errors under plain error review."). "For error to constitute plain error, a defendant must demonstrate that a fundamental error

occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (cleaned up); *see also State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

¶ 28      In relevant parts, N.C. Gen. Stat. § 1-149 states, "No pleading can be used in a criminal prosecution against the party as proof of a fact admitted or alleged in it." N.C. Gen. Stat. § 1-149 (2021). N.C. Gen. Stat. § 1-149 is not solely limited to the contents of a pleading. *Young*, 368 N.C. at 205, 775 S.E.2d at 302. Rather, our Supreme Court has "reviewed the admissibility of any evidence relating to civil pleadings or judgments utilizing the standard set out in N.C.G.S. § 1-149." *Id.* Thus, as a general rule, Section 1-149 "requires the exclusion of any evidence relating to the allegations and determinations made in the course of civil litigation 'as proof of a fact admitted or alleged in it.' " *Id.* at 205, 775 S.E.2d at 302 (quoting N.C. Gen. Stat. § 1-149 (2013)).

¶ 29      Notwithstanding this, a party is not completely barred from seeking to admit a civil judgment in a criminal case because "a party's decision to seek the admission of a civil judgment in a criminal case does not 'necessarily use the pleading as proof of any fact therein alleged.' " *Id.* at 208, 775 S.E.2d at 304 (quoting *State v. McNair*, 226 N.C. 462, 464, 38 S.E.2d 514, 516 (1946)). Instead, the extent to which a civil

pleading is admissible at a criminal trial "hinges on the purpose for which the challenged evidence is offered." *Id.* (citation omitted). Thus, the ultimate question before a trial court is whether the civil pleading is "relevant for some purpose other than proving the same facts found, admitted, or alleged in the civil proceeding in question." *Id.* at 207, 775 S.E.2d at 304.

¶ 30          In the present case, the trial court admitted the no-contact order at Defendant's criminal trial and permitted the witness to read the following portion aloud:

> The plaintiff has suffered unlawful conduct by the defendant in that: The defendant performed work without being hired then had plaintiff pay him with checks . . . under duress. Defendant has been charged with felonies related to the actions. Victim lives alone at the end of a street. She was born in 1930 and has difficulty hearing. The defendant has previously contacted the victim. . . . The defendant is not to be within 500 feet of . . . . The defendant is to have no communication with the victim by any means to include telephonic, social media, and third parties.

After the trial court admitted the no-contact order into evidence, the State asked questions pertaining to Meeks's prior testimony to illustrate that the issues addressed in the civil hearing on the no-contact order were similar to the issues before the trial court. *See McNair*, 226 N.C. at 464, 38 S.E.2d at 516 ("To offer an allegation in a pleading simply as evidence of its existence, or that it was made, is not necessarily to use the pleading as proof of any fact therein alleged."). Accordingly,

we hold the trial court did not violate N.C. Gen. Stat. § 1-149 by admitting the no-contact order.

¶ 31   Assuming *arguendo* the admission of the no-contact order violated N.C. Gen. Stat. § 1-149, this error nonetheless does not rise to the level of plain error. Davis testified there were no issues with rot damage or the water line and there was no evidence of water leaks underneath Meeks's house. Scott inspected Meeks's roof and testified Defendant did not perform the roof work he represented to Meeks. Specifically, Scott testified he found no evidence that new shingles were installed, rotten wood was removed, or of any work being done to prevent damage. Scott concluded the value of the work Defendant had performed on Meeks's roof was $300.00, not $1,500.00 as charged by Defendant. Moreover, Defendant was not licensed to perform the plumbing work he had undertaken. He also had a prior judgment entered against him for obtaining property by false pretenses, which the trial court allowed into evidence over his objection. The trial court also received into evidence Meeks's former testimony and the body camera footage from Officer Bailey's investigation.

¶ 32   We conclude, after a careful review of the record, the admission of the no-contact order did not have a probable impact on the jury's determination of Defendant's guilt. *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. The trial court did not commit plain error by admitting the no-contact order.

**D. Due Process**

¶ 33    Next, Defendant argues the trial court violated his due process rights by admitting the no-contact order when it contained the phrase "[t]he plaintiff has suffered *unlawful conduct* by the [d]efendant . . . ." We are unpersuaded.

¶ 34    The Due Process Clause prohibits any state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. An individual must be afforded due process when "a State seeks to deprive [him or her] of a protected liberty or property interest." *Wake Cnty. ex rel. Carrington v. Townes*, 53 N.C. App. 649, 650, 281 S.E.2d 765, 767 (1981). "[T]he touchstone of due process is the presence of fundamental fairness in any judicial proceeding adversely affecting the interests of an individual." *Id.* at 651, 281 S.E.2d at 767. When determining whether a defendant's due process rights were violated, we apply a *de novo* standard of review. *Stetser v. TAP Pharm. Prods., Inc.*, 165 N.C. App. 1, 14, 598 S.E.2d 570, 579 (2004).

¶ 35    We find no evidence here tending to indicate that the admission of the no-contact order violated Defendant's due process rights. Defendant had the opportunity to object to the admission of the no-contact order, did object to its entry at trial, and subsequently was overruled. As discussed *supra*, the no-contact order was introduced to establish that the issues from the no-contact hearing mirrored those in Defendant's criminal trial. Therefore, we hold the trial court did not violate Defendant's due

process rights by admitting the no-contact order.

**E. Constitutional Right to Inspect and Photograph the Crime Scene**

¶ 36 Lastly, Defendant argues the trial court violated his due process rights under the Sixth and Fourteenth Amendments of the United States Constitution by denying his motion to inspect, photograph, and examine the crime scene. We disagree.

¶ 37 The United States Supreme Court has established "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d. 30, 42 (1977); *accord State v. Cook*, 362 N.C. 285, 290, 661 S.E.2d 874, 877 (2008). As such, "a state does not violate the Due Process Clause of the Federal Constitution when it fails to grant pretrial disclosure of material relevant to defense preparation but not exculpatory." *State v. Cunningham*, 108 N.C. App. 185, 195, 423 S.E.2d 802, 808 (1992) (citation omitted). In North Carolina, a defendant's right to discovery is conferred by our general statutes, and, thus, "[c]onstitutional rights are not implicated in determining whether the State complied with these discovery statutes." *Cook*, 362 N.C. at 290, 661 S.E.2d at 877.

¶ 38 Defendant only alleges his Sixth and Fourteenth Amendment rights were violated. Because Defendant did not allege a violation of any North Carolina statutes, we need not address this issue on appeal.

¶ 39 Although we are bound by federal courts' decisions regarding the Due Process

Clause, *see Cunningham*, 108 N.C. App. at 195, 423 S.E.2d at 808, in *State v. Brown*, our Supreme Court held a criminal defendant has a due process right to inspect the crime scene under limited circumstances. *State v. Brown*, 306 N.C. 151, 165, 293 S.E.2d 569, 579 (1982). In *Brown*, the defendant murdered a mother and daughter. When the bodies were discovered, the police promptly secured, cordoned off, and controlled the crime scene. *Id.* at 163, 293 S.E.2d at 578. The defendant made "pre-trial discovery motions and motions . . . during trial" to "search for exculpatory evidence[,]" but the trial court denied each motion. *Id.* at 162–63, 293 S.E.2d 577–78. The defendant ultimately received the death penalty for both murders. *Id.* at 161, 293 S.E.2d at 577. On appeal, our Supreme Court held that denying the defendant an opportunity to undertake a limited inspection of the premise under police supervision was "a denial of fundamental fairness and due process." *Id.* at 163–64, 293 S.E.2d at 578. Notwithstanding, the Court emphasized, "[O]ur holding is limited to the particular facts of this case and our holding is in no way to be construed to mean that police or prosecution have any obligation to preserve a crime scene for the benefit of a defendant's inspection." *Id.* at 164, 293 S.E.2d at 578.

¶ 40    Defendant relies heavily on *Brown* in his brief. However, the facts in this case are distinguishable from those in *Brown*. Unlike the defendant in *Brown*, Defendant was convicted of obtaining property by false pretenses and exploitation of an older adult while in a business relationship. Moreover, while the defendant in *Brown*

requested to search the crime scene in an attempt to find exculpatory evidence, Defendant did the repair work in question here himself. Consequently, Defendant had first-hand knowledge of the work he performed on Meeks's house and did not need to examine the house in order to find exculpatory evidence. Because of these factors and because our Supreme Court clearly stated the holding in *Brown* "is limited to the particular facts" of that case, we decline to extend the holding in *Brown* to this case. *Id.* Defendant did not have a constitutional right to examine Meeks's house. Thus, we hold the trial court did not err by denying Defendant's motion to inspect, examine, and photograph the house.

### III.    Conclusion

For the foregoing reasons, we hold the trial court did not err by admitting Meeks's former testimony, admitting the no-contact order, or denying Defendant's motion to inspect, examine, and photograph Meeks's house. We hold defendant received a fair trial, free from error.

NO ERROR.

Judges DIETZ and MURPHY concur.